**In the Matter of the Grand Jury Subpoena Served Upon Pedro ARCHULETA.**

**No. 1547, Docket 77–1286.**

United States Court of Appeals, Second Circuit.

Argued July 21, 1977.

Decided July 22, 1977.

Opinion Aug. 19, 1977.

Lawrence Stern, Brooklyn, N. Y. (Linda Backiel, New York City, Joan Friedland,

Santa Fe, New Mexico, of counsel), for appellant Archuleta.

Thomas E. Engel, Asst. U. S. Atty., S. D. N. Y., New York City (Robert B. Fiske, Jr., U. S. Atty., Frederick T. Davis, Asst. U. S. Atty., S. D. N. Y., New York City, of counsel), for United States.

Before WATERMAN and MESKILL, Circuit Judges, and COFFRIN, District Judge.*

MESKILL, Circuit Judge:

Pedro Archuleta, the appellant here, was found to be in civil contempt for refusing to answer questions put to him by a grand jury empanelled in the Southern District of New York. The order of contempt, issued by Judge Owen, remanded Archuleta until he purged himself of his contempt or until the term of the grand jury expires. 28 U.S.C. § 1826(a). Because of the time limitation of 28 U.S.C. § 1826(b), we affirmed the order of the district court on July 22, 1977;[1] this opinion explains the basis of our decision.

On January 24, 1975, a bomb exploded in Fraunces Tavern, a restaurant in New York City. Four people were killed, and fifty-three were injured. A group known as Fuerzas Armadas de Liberacion Nacional Puertorriquena, or "FALN," which seeks independence for Puerto Rico, claimed responsibility for this act of terrorism. A number of subsequent bombings have been traced to the FALN.

In April, 1975, a grand jury was empanelled in the Southern District of New York to investigate these bombings. The term of that grand jury expired in October, 1976. A second grand jury, empanelled to investigate the same crimes is now sitting.

In November, 1976, a "bomb factory" was discovered in an apartment in Chicago, owned by one Carlos Torres. Evidence was found there linking Torres, who is now a fugitive, to the FALN. Searchers also found a letter from a church in San Antonio, Texas, to Maria Cueto, the Executive Director of The National Commission on Hispanic Affairs of The Protestant Episcopal Church. Miss Cueto and her secretary, Raisa Nemikin were called before the grand jury, and refused to testify concerning the whereabouts of Torres, after being ordered to do so. *See In re Wood,* 430 F.Supp. 41 (S.D.N.Y.1977). They were held in civil contempt by the district court, and were remanded until they testified. This Court affirmed the judgment of contempt, *In re Cueto,* 554 F.2d 14 (2d Cir. 1977), and they are presently incarcerated.

Shortly after our decision in *Cueto, supra,* a grand jury subpoena was served upon the appellant. He had been a member of The National Commission on Hispanic Affairs; he had also been named in various newspaper accounts as a possible supplier of dynamite to the FALN. Motions to quash the subpoena were denied by Judge Lasker. Before the grand jury, he was asked the following questions:

(1) Did you provide dynamite to anyone you knew to be in a group called the FALN at any time prior to January 24, 1975?

(2) Do you know the source of dynamite explosives used at the bombing of Fraunces Tavern?

(3) Do you know anyone who is responsible for the bombing at Fraunces Tavern?

(4) In early 1968 did you yourself steal any dynamite from the Heron Dam Project site near Parkview, New Mexico?

Archuleta invoked his Fifth Amendment immunity, and refused to testify. The prosecution then applied for, and obtained, from Judge Brieant, an order of immunity. Judge Brieant also entered a protective order designed to avoid public disclosure of the grand jury proceedings.

---

* Hon. Albert W. Coffrin of the District of Vermont, sitting by designation.

1. 28 U.S.C. § 1826(b) provides:

Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal.

Thereafter, Archuleta refused a second time to answer these four questions. After the foreman had expressly directed him to answer, the questions were asked a third time. Rather than responding, appellant made a series of political speeches explaining his refusal to testify. After polling the jury to determine that they all felt the questions to be "reasonably necessary and proper," Judge Brieant directed appellant to testify. When Archuleta persisted in his contumacious conduct, he was held in contempt on June 30, 1977, by Judge Richard Owen, and remanded, pursuant to 28 U.S.C. § 1826.

## I.

■ Appellant's first contention is that the grand jury had no evidentiary basis upon which to call him. In *Blair v. United States,* 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919), it was stated that a witness before a grand jury is:

> bound not only to attend but to tell what he knows in answer to questions framed for the purpose of bringing out the truth of the matter under inquiry.
>
> He is not entitled to urge objections of incompetency or irrelevancy, such as a party might raise, for this is no concern of his.

*Id.* at 282, 39 S.Ct. at 471. This has continued to be the rule. Recently, Judge Friendly explained:

> The safeguards built into the grand jury system, such as enforced secrecy and use of court process rather than the constable's intruding hand as a means of gathering evidence, severely limit the intrusions into personal security which are likely to occur outside the grand jury process. To be sure, on occasion, a grand jury may overstep bounds of propriety

either at its own or the prosecutor's instance, and conduct an investigation so sweeping in scope and undiscriminating in character as to offend other basic constitutional precepts. When this occurs courts are not without power to act. . .
> Apart from such cases, when the grand jury has engaged in neither a seizure nor a search, there is no justification for a court's imposing even so apparently modest a requirement as a showing of "reasonableness"—with the delay in the functioning of the grand jury which that would inevitably entail.

*United States v. Doe (Schwartz),* 457 F.2d 895 (2d Cir. 1972), *cert. denied,* 410 U.S. 941, 93 S.Ct. 1376, 35 L.Ed.2d 608 (1973). *See Branzburg v. Hayes,* 408 U.S. 665, 701–02, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *Hale v. Henkel,* 201 U.S. 43, 65, 26 S.Ct. 370, 50 L.Ed. 652 (1906).

The actions of the grand jury here are clearly justified. The questions asked of Archuleta were narrowly focused on criminal conduct which had occurred in the Southern District. His common association with two fugitives sought by the FBI in connection with a possibly related crime,[2] as well as the newspaper reports of his activities, were fully sufficient to justify the subpoena. *See Branzburg v. Hayes, supra,* at 701–02, 92 S.Ct. 2646; *Costello v. United States,* 350 U.S. 359, 362–63, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Archuleta's attempt to evade his duty as a citizen on this ground is without merit.[3]

## II.

■ Archuleta's second claim is that the questions asked him in the grand jury were based on illegal electronic surveillance, and thus that the contempt order must be vacated under *Gelbard v. United States,* 408

---

**2.** Arrest warrants for Torres and Oscar Lopez, charging possession of explosives and unlawful flight, have been issued in Chicago.

Archuleta now complains that he was never asked a question about the whereabouts of Torres. It ill becomes a witness who contumaciously refused to testify to claim a deprivation of rights based on the grand jury's failure to question him further.

**3.** Archuleta also appears to claim that this grand jury is not interested in finding the bombers responsible for four deaths, but is merely persecuting him and those who share his political views. There being no evidence to support this contention, we consider it groundless.

U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). This claim is also without merit.

The appellant made sweeping allegations of illegal wiretapping before the district court. The evidence marshalled in support of this was a recitation of difficulties in completing calls, together with strange noises heard on completed calls. There was also an affidavit, from one Mary Lujan, stating that she had been asked by FBI agents if she had telephoned Archuleta.

In response, the government produced affidavits from the Assistant United States Attorney and FBI agents in charge of the investigation of FALN bombings in New York. These affiants stated that they were unaware of any illegal electronic surveillance of Archuleta. A similar set of affidavits was submitted from federal authorities in Chicago, where an investigation into related crimes is underway. Finally, the prosecutor submitted an affidavit from the person in charge of the records of electronic surveillance maintained by the FBI in Washington stating that a search of those records revealed no electronic surveillance of appellant. The appellant now challenges this response as inadequate and argues that searches of state and local records in New Mexico, Illinois and New York were required before he could be held in contempt.

We doubt whether the appellant has made even the preliminary showing necessary to require the government to respond to his claim of illegal electronic surveillance. Some mechanical troubles with a telephone, together with knowledge of a call easily derived from long distance telephone records,[4] is such insubstantial evidence that in most cases it puts no burden on the prosecutor to "affirm or deny" the existence of wiretapping. *See In re Grand Jury (Vigil),* 524 F.2d 209, 214 (10th Cir. 1975), *cert. denied,* 425 U.S. 927, 96 S.Ct. 1526, 48 L.Ed.2d 170 (1976).

However, if, as the district court held, the showing made was sufficient to trigger a governmental response, the answer of the prosecutor was sufficient. As we recently explained in *United States v. Yanagita,* 552 F.2d 940 (2d Cir. 1977):

But even in a grand jury proceeding, upon the government's production of a valid warrant the witness has been held not to be entitled to a full-blown hearing on the legality of the warrant prior to testifying since "the traditional notion that the functioning of the grand jury system should not be impeded or interrupted could prevail at that time over the witness' interest . . . ." *In re Persico,* 491 F.2d 1156, 1160 (2d Cir. 1974). *See also Gelbard v. United States, supra,* 408 U.S. at 70, 92 S.Ct. 2357 (White, J., concurring).

Similarly, where the questions asked of a grand jury witness are narrow in scope, an affidavit by the Assistant United States Attorney in charge of the grand jury proceeding, as distinguished from an all-agency search, will suffice, since he would know if his questions were derived from illegal surveillance.

"It must be remembered that any electronic surveillance by the government is relevant only if it is somehow used in formulating questions that the grand jury intends to ask. Thus, surveillance conducted by the government, the results of which were not known to the agents investigating this case, would not be relevant. . . . I think that the assistant United States attorney handling a case and the FBI agent in charge of the investigation of a case are the two people most likely to know if the fruits of any electronic surveillance were used to gain information on which the grand jury would base its questions. Thus, I think that the denial was sufficient." *United States v. Grusse,* 515 F.2d 157, 159 (2d Cir. 1975) (Lumbard, J., concurring).

In addition, the duty of the government to respond under § 3504 may vary with the specificity of the claims raised by the witness. *United States v. See,* 505 F.2d 845, 856 (9th Cir. 1974), *cert. denied,* 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673

---

4. There is no claim that the FBI knew of the contents of the call.

(1975); *United States v. Stevens*, 510 F.2d 1101 (5th Cir. 1975).

*Id.* at 944. *See Gelbard v. United States*, 408 U.S. 41, 71, 92 S.Ct. 2357, 2373, 33 L.Ed.2d 179 (1972) (White, J., concurring). ("Of course, where the Government officially denies the fact of electronic surveillance of the witness, the matter is at an end and the witness must answer.") The standard set out in *Yanagita* was fully complied with. The questions put to Archuleta were narrowly focused on specific criminal activity. It was thus relatively simple for the prosecutor to determine the evidentiary basis for the questions. In response to vague, sweeping charges of wiretapping, the government responded with specific, factual denials of illegal conduct. *Gelbard* requires no more.[5]

### III.

■ Archuleta has also challenged the racial and ethnic composition of the grand jury.[6] All parties agree that this grand jury was selected by procedures which complied with the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 *et seq.* The

vague, conclusory allegations of underrepresentation of Hispanics made by Archuleta do not even make out a colorable claim of a constitutional violation, let alone a substantial and prejudicial exclusion of minority jurors. Absent such a showing, this jury, selected in accordance with a valid law, is not subject to attack.[7] *United States v. Bennett*, 539 F.2d 45, 55 (10th Cir. 1976), *cert. denied*, 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976).

### IV.

■ Archuleta's final point of any substance is a claim that his conduct is justified because of newspaper stories concerning the FALN, which have appeared during the investigation of the bombings. Apparently, his theory is that anything he might say in the grand jury might be disclosed by the jurors or the prosecutor, who may have "leaked" the material already published.[8] His ostensible concern is that some of this testimony would thus reach the Chicago grand jurors who are also investigating FALN bombings. Archuleta is a "target" of that grand jury investigation.

5. After oral argument, Archuleta's counsel submitted a letter to the Court alleging that the Bureau of Alcohol, Tobacco and Firearms ("ATF") was also investigating the FALN. He now demands that appellant be released until an affidavit is secured from ATF denying any illegal electronic surveillance.

   Assuming, arguendo, that ATF has actively investigated this case, our decision is not affected. *Gelbard* and *Yanagita* focus the investigation of "taint" on the particular questions put to the witness. Here, the Assistant United States Attorney, who knows the source of his own questions, denied any knowledge of electronic surveillance. This meets the requirements of *Gelbard* and *Yanagita* in this case.

6. Archuleta made the same challenge when called before a grand jury in the Northern District of Illinois. The district court there rejected the challenge on the merits.

7. The appellant concedes that he has no statutory standing to mount this challenge under 28 U.S.C. § 1867. He relies exclusively on his constitutional challenge. The government vigorously urges that Archuleta lacks any standing to raise this claim. *In re Maury Santiago*, 533 F.2d 727 (1st Cir. 1976), so held, *citing United States v. Duncan*, 456 F.2d 1401, 1403–04 (9th Cir.), *vacated for reconsideration of other matters*, 409 U.S. 814, 93 S.Ct. 161, 34

L.Ed.2d 72 (1972). *See Blair v. United States*, 250 U.S. 273, 282, 39 S.Ct. 468, 63 L.Ed. 979 (1919).

   However, in *United States ex rel. Chestnut v. Criminal Court*, 442 F.2d 611 (2d Cir.), *cert. denied*, 404 U.S. 856, 92 S.Ct. 111, 30 L.Ed.2d 98 (1971), relied on by Archuleta, a footnote indicated that a witness before a state grand jury had standing to challenge its composition. *Id.* at 615 n. 7. However, that grand jury had the power to institute criminal contempt charges, which it had done. Here, by contrast, we are dealing with a civil contempt initiated by the United States Attorney. The *Chestnut* court focused on these powers of the grand jury, which are unavailable in federal practice. While we do not decide the issue, the footnote in *Chestnut* appears to be a weak reed for any future challenge by a witness to the grand jury array. Moreover, *Chestnut* resolved the substantive issue against the contemnor on the ground that the jury selection procedure was fair, and created no prejudice, even if some groups were under-represented.

8. The Department of Justice is now investigating those disclosures. We assume that it will take appropriate measures against those responsible.

**1064**

It is self-evident that no breach of grand jury secrecy concerning Archuleta has occurred to date, since he has refused to answer any questions. The government has supplied affidavits denying that any breach of grand jury secrecy was the basis for the articles mentioned. Nor is there any reason to believe that the jurors or the prosecutor will violate their oaths, and invade the secrecy of the proceedings. Appellant's speculation does not provide a justification for his contumacious conduct. If such violations do occur, the district court has adequate powers to remedy the situation.

The remainder of Archuleta's many claims, consisting largely of wholly unwarranted attacks on various federal judges and prosecutors, are not worthy of discussion. The judgment of civil contempt is affirmed.