**In the Matter of the Grand Jury Subpoenas served on Andres ROSADO, Julio Rosado, and Luis Rosado.**

No. M–11–88.

United States District Court,
S. D. New York.

Sept. 27, 1977.

Jesse Berman, New York City, for movants.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y. by Marc Marmaro, Asst. U. S. Atty., New York City, for United States Government.

## MEMORANDUM AND ORDER

OWEN, District Judge.

Andres, Julio, and Luis Rosado move for (I) an order vacating my order of August 22, 1977 holding them in civil contempt pursuant to 28 U.S.C. § 1826, (II) an order directing the government to respond to the Rosados' allegations of illegal electronic surveillance and for a hearing on their claims of illegal electronic surveillance, (III) an order directing that pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A, they be furnished the transcribed minutes of the contempt and related proceedings,

and (IV) a protective order barring use by the government of the Rosados' signatures on CJA affidavits appended to the order to show cause.

■ (I) This proceeding commenced before me on August 16, 1977 when attorney William Kunstler appeared before me in the robing room of Part I to obtain an adjournment of certain grand jury subpoenas addressed to the Rosado brothers. While the Rosado brothers had been represented by attorney Jesse Berman in connection with federal inquiries into bombings attributed to the FALN, Mr. Kunstler informed me that Mr. Berman was on a camping trip in Guatamala and could not be reached. Mr. Kunstler also informed me (and this representation has never been denied by him or any of the Rosados) that:

> "They [the Rosado brothers] asked me to represent them until Jesse Berman came back, which would be about the 26th or 28th of August. I told them I would represent them."

The Assistant United States Attorney opposed the adjournment, stating that the matters sought by the grand jury were clearly not testimonial,[1] were not privileged,[2] and there was no need for delay. Mr. Kunstler then stated that the Rosados would not cooperate with the grand jury, but merely wished time to formulate and interpose legal objections to performance. In this regard, he stated:

> "Mr. Kunstler: . . . I think Mr. Marmaro knows, because he told me that he had been informed, that they [the Rosado brothers] are not going to cooperate, so it is going to be a legal issue.
>
> "Mr. Marmaro: And I have told Mr. Kunstler that the Government would move to hold them in contempt.
>
> "Mr. Kunstler: Oh, there will be a contempt hearing. If it goes all the way there may be incarceration. But we want a fighting chance."

---

1. The grand jury was seeking only finger and palm prints, and voice and handwriting exemplars.

2. There is no fourth or fifth amendment obstacle to the grand jury's right to prints and exemplars. *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973).

The Rosados were thereupon given a six day adjournment.

On the morning of August 22, the adjourned day, Mr. Kunstler appeared together with the Rosados. He announced that he now represented only Andres, and that Julio and Luis were appearing *pro se.* A memorandum of law was submitted subscribed by Mr. Kunstler as attorney for Andres, and by Julio and Luis, each *pro se.* Legal argument was heard from all three. The legal objections were overruled and the witnesses directed to comply with the subpoenas before the grand jury. They refused, and the court ordered them to comply. The witnesses returned to the grand jury and again refused. Late in the afternoon of August 22, when the court found them in contempt and proposed to rule, *for the first time* Julio and Luis requested an adjournment until their attorney would return from his vacation. I regarded this request for counsel at that time as frivolous and so regard it now. While there is no question that a witness embroiled in a contempt situation before a grand jury is entitled to counsel, *In re Di Bella,* 518 F.2d 955, 959 (2d Cir. 1975), the present contention of Julio and Luis Rosado that they were forced to proceed in the absence of counsel of their choice and were entitled to explicit instructions from the court outlining their right to counsel and the dangers of proceeding *pro se* is, on this record, wholly without merit. *See United States v. Rosenthal,* 470 F.2d 837, 844–45 (2d Cir. 1972), *cert. denied,* 412 U.S. 909, 93 S.Ct. 2298, 36 L.Ed.2d 975 (1973). Andres and Julio Rosado had had Mr. Berman as their lawyer in connection with the various FALN inquiries since March and May 1976, respectively, and Luis has been represented by Mr. Berman in those matters since January 1977. In his absence, they engaged William Kunstler on August 15 to represent all three of them.

As of August 15, they were therefore fully aware of their right to counsel, the benefits of counsel, and, indeed, they all had counsel. For whatever tactical reason, somewhere in the period August 16 to August 22, two of the Rosados decided not to have Mr. Kunstler appear for them as an attorney of record, although submitting joint papers with him. Mr. Kunstler, one notes, a number of times during the day of August 22 even appeared to be speaking on behalf of all three brothers,[3] and since all three were obviously united in interest, Mr. Kunstler, speaking for one, was, as a practical matter, speaking for all three.

Were one to speculate on what was really going on here, a clear background is provided by Mr. Kunstler's statements to me on our first meeting on August 16. On that day, he stated that (1) the Rosados were not going to cooperate, (2) they wished to make legal arguments, and (3) he recognized that on the adjourned date there would be a contempt hearing and there might even thereafter be incarceration, "if it goes all the way . . . ."[4] It is reasonably clear that the Rosados did not anticipate the speed with which events moved on August 22. They perhaps expected more drawn-out proceedings as had occurred with regard to Pedro Archuleta, another witness in the same inquiry. See *In re Archuleta,* 561 F.2d 1059 (2d Cir. 1977). Thus, having relinquished Mr. Kunstler as counsel on the morning of August 22, they found themselves at the end of the day, after their hearing on the legal issues, facing possible incarceration which they had thought might come some time in the future. Only then did they suddenly raise the question of counsel to obtain a delay of what was squarely before them. Having had Mr. Kunstler as counsel of record until that morning, and having relinquished him for

3. "Mr. Kunstler: There is not going to be an immunity grant? Then, Judge, each of the defendants raises a constitutional right in the grand jury under all the amendments of the Constitution, including the Fifth, and that is where we are at this moment." *Transcript of August 22, 1977, 2:55 P.M.* at 5.

4. The adjournment of six days afforded the Rosados the notice they are entitled to under *In re Sadin,* 509 F.2d 1252 (2d Cir. 1975), for the purpose of preparing a defense to the citation for contempt which everyone knew was inevitable.

reasons best known to themselves,[5] such a tactical reversal—to demand counsel—for the apparent purpose of delay cannot be countenanced.

■ (II) The Rosados allege "eight factors" supporting their claim of illegal electronic surveillance. According to my notes on oral argument they are:

(1) Evidence produced at a Chicago hearing that a telephone, number (312) 235–2801, belonging to Jose Lopez, one of the witnesses subpoenaed there in connection with an FALN bombing grand jury investigation, was tapped;

(2) The fact that the Rosados frequently called (312) 235–2801 and received calls from that number and spoke with Jose Lopez, documentary evidence of which was produced at the oral argument in the form of telephone bills appended as an exhibit to an affidavit by Joan Lois Rosado, wife of Julio Rosado;

(3) Assertions in Joan Lois Rosado's affidavit that since May 1976 she has "noticed . . . frequent loud clicks . . . whirring sounds . . . sudden drops in volume, very frequent 'wrong numbers and crossed wires,' and conversations which are inexplicably cut off";

(4) Evidence in the form of a copy of a letter from FBI Director Clarence Kelley to Mr. Michael Ratner, attorney for Jesse Berman—the Rosados' attorney—informing Mr. Ratner of the existence of documents relating to Mr. Berman, in response to a request made under the Freedom of Information Act;

(5) The fact that a well-concealed safe, purported to contain Pedro Archuleta's papers, was stolen from Mr. Berman's office apparently over the weekend preceding the contempt proceeding on August 22, 1977;

(6) The fact that the Rosado brothers were asked by the grand jury for voice exemplars talking into a telephone reciting the line, "There will be a message at 14th Street on the subway station. Thank you," indicates that the authorities must have a recording in which the quoted statement is spoken and that they have another recording, known to contain the voice of one of the Rosado brothers, which matches the voice in the first recording, and that the voice exemplars are desired to determine which of the three brothers it is; and that this purported recording known to contain the voice of one of the Rosado brothers must have resulted from an illegal electronic surveillance;

(7) The fact that a pending criminal indictment in a case captioned *United States v. Benjamin Cruz,* in which Mr. Berman was defense counsel, was nollied one and one-half years after a request by the defense that the government affirm or deny the existence of illegal electronic surveillance, rather than to comply with the request; and finally

(8) The totality of the circumstances represented by the prior seven factors.

I conclude that neither singly, nor in combination, do these factors support the Rosados' position.

(1) As to the Chicago "wire tap," after lengthy hearings and the taking of substantial testimony before Chief Judge James B. Parsons of the United States District Court for the Northern District of Illinois on August 17, 1977, Chief Judge Parsons denied a motion to quash grand jury subpoenas, which had been made on the basis of allegations of illegal wiretapping of Jose Lopez' telephone. I have a transcript of the full hearing and have been offered no additional evidence bearing directly on the existence of a telephone tap on the Lopez telephone in Chicago. Therefore, there is no occasion for me to review the determination made by Chief Judge Parsons.

(2) The fact that the Rosados called the Lopez number in Chicago does not raise an inference of electronic surveillance either in Chicago or New York.

(3) These claims are similar to those made by Pedro Achuleta and rejected by

---

5. One wonders why, if their desire for counsel was genuine, and Mr. Kunstler having been

their counsel on August 16, they did not simply seek to reinstate him.

the Court of Appeals in *In re Archuleta, supra,* as a showing sufficient to require the government to affirm or deny the existence of electronic surveillance. *Id.,* 561 F.2d at 1062.

(4)–(7) These do not on their face raise any inference at all of electronic surveillance.

(8) Finally, the seven factors viewed together raise no inference of electronic surveillance. To conclude otherwise, in my opinion, would be pure speculation.

There is no allegation here, as there apparently was in *United States v. Grusse,* 515 F.2d 157 (2d Cir. 1975), that questions asked a grand jury witness could only have resulted from wiretapping. *In re Millow,* 529 F.2d 770, 774 (2d Cir. 1976). Indeed, Mr. Berman, in paragraph 4 of his affidavit in support of the order to show cause herein, stated that he commenced representing the Rosados in connection with this general inquiry in 1976, so it is apparent that the government was aware of the Rosados for quite some time before there were ever any allegations of wiretapping.

Similarly, this is not a case such as *United States v. Toscanino,* 500 F.2d 267 (2d Cir. 1974), in which there are allegations that:

American officials bribed an employee of the public telephone company to conduct electronic surveillance of him and that the results of the surveillance were given to American agents and forwarded to government prosecutors in New York. According to Toscanino, the telephone company employee was eventually arrested in Uruguay for illegal eavesdropping and was indicted and imprisoned.

*Id.* at 270. Here, the Rosados have failed to raise anything but "unsupported suspicion," *In re Millow,* 529 F.2d at 775, and not a claim with "a 'colorable' basis," which is the minimum requirement in order "to trigger the government's obligation to respond under [18 U.S.C.] § 3504." *United States v. Yanagita,* 552 F.2d 940, 943 (2d Cir. 1977). *See In re Grand Jury (Vigil),* 524 F.2d 209, 214 (10th Cir. 1975), *cert. denied,* 425 U.S. 927, 96 S.Ct. 1526, 48 L.Ed.2d 170 (1976). Thus, here, where the Rosados were not asked any questions, let alone narrow questions, but rather were only required by the grand jury to produce fingerprints, palm prints, and voice and handwriting exemplars, as to which a challenge based on the fourth and fifth amendments to the Constitution is foreclosed by *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), I find that the showing made by the Rosados of possible wiretapping is insufficient to require the government even to file an affidavit by the Assistant United States attorney in charge of the grand jury investigation denying or affirming that the basis for the grand jury subpoena for the Rosados was the fruit of a wiretap. *See In re Archuleta, supra.*

■ (III) The Rosados have also moved for an order authorizing them to receive transcripts of the court proceedings under the Criminal Justice Act (CJA), 18 U.S.C. § 3006A.

18 U.S.C. § 3006A(a) mandates that each district plan provide that the benefits of the CJA be extended to those:

(4) for whom the Sixth Amendment to the Constitution requires the appointment of counsel or for whom, in a case in which he faces loss of liberty, any Federal law requires the appointment of counsel.

Paragraph 2.01(a)(4) of the *Guidelines for the Administration of the Criminal Justice Act* states that the purpose of this provision is "to obviate the need for future amendments to the Act each time the right to counsel may be extended to new situations by judicial decision or Federal statutes."

*In re Di Bella,* 518 F.2d 955, 959 (2d Cir. 1975), extended the right to effective assistance of counsel to those, like the Rosados, charged with civil contempt under 28 U.S.C. § 1826. Accordingly, I will authorize payment for one set of transcripts under the CJA to be shared by the Rosados.

■ (IV) Finally, the Rosados move for a protective order barring the government from using the signatures on their CJA affidavits. They do not want the grand jury to obtain indirectly that which they have refused to supply directly.

This motion is frivolous. As their CJA affidavits reveal, all three brothers have charge accounts from which the government can readily obtain copies of their signatures. The most that this motion can accomplish, even if granted, is to put the government to some slight extra trouble and expense.

 Suffice it to say that the information contained in these signatures is not privileged, and that no recognized ground for deleting it from the record has been suggested by counsel. Certainly the court may not expunge or seal a portion of the record merely because the attorney who filed a particular item has concluded that it was a strategic error to do so. *See Ferraro v. Arthur M. Rosenberg Co., Inc.*, 156 F.2d 212, 214 (2d Cir. 1946) (discussing Fed.R. Civ.P. 60(a) ); *United States v. Walker*, 17 F.R.D. 5, 7 (S.D.N.Y.1955) (discussing Fed. R.Crim.P. 36).

Accordingly, the motion is denied insofar as a protective order is sought.

In summary, the request for authorization of transcripts under the CJA is granted; the motion is in all other respects denied.

So Ordered.