**In the Matter of the Grand Jury Subpoena Served Upon Pedro ARCHULETA.**

**No. M11–188.**

United States District Court, S. D. New York.

Feb. 2, 1978.

Reargument Denied Feb. 22, 1978.

Lawrence Stern, Brooklyn, N.Y. (Linda Backiel, New York City), for Pedro Archuleta.

Thomas E. Engel, Asst. U.S. Atty., Southern District of New York, New York City (Robert B. Fiske, Jr., U.S. Atty., New York City, S.D.N.Y.), for United States.

## MEMORANDUM AND ORDER

OWEN, District Judge.

An indiscriminate killing of four innocent diners lunching at the historic Fraunces Tavern in New York City occurred on January 24, 1975, when a charge of dynamite was deliberately exploded. Fifty-three other diners were injured. Credit for this and a number of other dynamitings was claimed by a terrorist organization called Fuerzas Armadas de Liberacion Nacional Puertorriquena ("FALN"), which seeks independence for Puerto Rico.

Movant, Pedro Archuleta, a resident of New Mexico, was summoned before a grand jury in this district.[1] From the questions asked of him, one can infer that the prosecuting authorities had some belief that he was a participant or co-conspirator in the bombing. Those questions included:

(1) Did you provide dynamite to anyone you knew to be in a group called the FALN at any time prior to January 24, 1975?

(2) Do you know the source of dynamite explosives used at the bombing of Fraunces Tavern?

(3) Do you know anyone who is responsible for the bombing at Fraunces Tavern?

(4) In early 1968 did you yourself steal any dynamite from the Heron Dam Project site near Parkview, New Mexico?

1. He was also summoned before a federal grand jury in Chicago, Illinois; see fn. 3, infra.

Archuleta refused to answer these questions notwithstanding a grant of immunity from prosecution by the Attorney General. On June 30, 1977, for his failure to answer, he was found in contempt under 28 U.S.C. § 1826 and ordered confined until he purged himself by testifying or for the life of the grand jury or for eighteen months, whichever first occurred.[2]

Archuleta asserts that he will never answer the questions. He further urges that the six months that he has now been incarcerated without effect has demonstrated this, and that therefore further incarceration is no longer coercive but has become punitive.[3] Based on this, he seeks immediate release.[4] I cannot accept either Archuleta's premise or his conclusion.[5]

Archuleta is correct that § 1826 is a coercive, not a punitive statute. It provides that upon refusal to comply with a court order to testify, a recalcitrant witness may be confined "until such time as the witness is willing to give such testimony . . ."[6] Indeed, as Archuleta urges, the passage of time may demonstrate that he prefers to remain silent as to any possible personal participation in, or awareness of a conspiracy to commit murder, regardless of the personal cost of such silence. I am unwilling, however, in this case, to free Archuleta from whatever coercion may yet exist to compel the possibly invaluable testimony which a United States grand jury investigating this act of murder is entitled to receive.

Archuleta's motion for an order of release is therefore denied.

So Ordered.

## ON MOTION FOR REARGUMENT

On this motion for reargument, only one matter, in my judgment, requires discussion. As I read 28 U.S.C. § 1826, it permits incarceration according to its terms, notwithstanding the contemnor's insistence that he will never comply. See *United States v. Hughey,* 571 F.2d 111, 114 (2d Cir., February 15, 1978). I therefore do not feel I am required to hear Mr.

---

2. The order was affirmed upon appeal. *In the Matter of the Grand Jury Subpoena Served Upon Pedro Archuleta,* 561 F.2d 1059 (2d Cir. 1977).

3. I am aware of but do not feel bound by the opinion of Chief Judge James P. Parsons in the United States District Court in Chicago rendered less than a month ago, January 6, 1978. There he observed that after some five months of coercive incarceration running concurrently on Archuleta for civil contempt in Chicago, Archuleta had failed to furnish the Chicago grand jury with fingerprints, handwriting exemplars and photographs. Based upon Archuleta's dogmatic statement to him that he would never furnish these, Judge Parsons concluded that Archuleta would never change his position, and ordered his release.

4. While the court has discretion in this area, clearly Archuleta does not address himself to such discretion.

5. I am also aware of *In Re Cueto,* 443 F.Supp. 857 (S.D.N.Y.1978) by Judge Robert L. Carter of this Court. There, two women, lay ministers of a recognized church, had asserted religious convictions as the basis for refusing to answer questions in the course of the same FALN inquiry. The questions sought information as to the whereabouts and activities of one Carlos Torres, suspected of being a principal actor in the Fraunces Tavern bombing; possible sources of FALN funds; and knowledge of *any* person involved in the Fraunces Tavern bombing. The women were adjudged in contempt for their refusal to answer and incarcerated pursuant to § 1826. After ten months incarceration, they moved for release. Judge Carter noted that the contemnors' religious convictions did not justify refusal to answer, but concluded their convictions were held in good faith. He also observed that there was no indication the women belonged to the FALN or supported its methods or goals, or that they themselves had been involved in criminal activities, and conversely that they appeared to be legitimately engaged in the work of their church. He concluded that after ten months of incarceration, any knowledge they may earlier have had about Torres' whereabouts had become stale and unlikely to advance the grand jury's investigation, and that the financial information sought could be more accurately ascertained from *other* sources. Judge Carter thus held that "coercive incarceration beyond six months" was not justified in the situation, and ordered the contemnors' immediate release. The case is, in my opinion, clearly distinguishable.

6. Subject, of course, to the termination of the life of the grand jury, or 18 months.

Archuleta personally on this motion. *Ab initio* it is clear that as a matter of law, there is nothing that he proposes to say that would automatically and without question entitle him to be released.

Next I turn to whether or not he should be released in the court's discretion—incidentally, a matter to which he did *not* originally address himself, notwithstanding counsel's belated assertion that that was included within the request for "such other and further relief as may be just and proper." Normally Archuleta, in the first instance, would have furnished the court an affidavit at least suggesting something that as *a matter of discretion* the court should consider bearing upon his release. Only then could the court make a determination as to whether any hearing was necessary to consider the relief requested. No affidavit of Archuleta was furnished the court on the moving papers. Notwithstanding this, I treated the transcript of Archuleta's appearance before Chief Judge Parsons in Chicago on January 6, 1978 as such an affidavit. There Archuleta unqualifiedly stated that he would never respond before the Chicago grand jury, and I draw the conclusion that moving counsel was doubtless urging that, similarly, Archuleta would never respond before the New York grand jury and would so state. I accepted this. There was therefore no need to have him repeat this in an affidavit before me, nor to come before me personally to say it again.

Having commented as above, the motion for reargument is denied.

So Ordered.