UNITED STATES of America, Appellee,

v.

Julio ROSADO, Andres Rosado, Ricardo Romero, Steven Guerra, and Maria Cueto, Defendants-Appellants.

Nos. 251, 387 to 390, Dockets 83–1213 to 83–1217.

United States Court of Appeals, Second Circuit.

Argued Oct. 12, 1983.

Decided Feb. 10, 1984.

---

9.  *See supra* note 1.

Elizabeth M. Fink, Brooklyn, N.Y., for defendant-appellant Cueto.

Julio Rosado, for defendant-appellant Julio Rosado pro se.

Michael E. Deutsch, Chicago, Ill. (Margaret Ratner and Michael Ratner, New York City, on the brief for all appellants), for defendants-appellants Guerra, Romero, and Andres Rosado.

James D. Harmon, Jr., Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., L. Kevin Sheridan and Charles E. Rose, Asst. U.S. Attys., Brooklyn, N.Y., on the brief), for appellee.

Before NEWMAN and DAVIS,* Circuit Judges.**

JON O. NEWMAN, Circuit Judge:

This appeal illustrates the hazards of permitting defendants in a criminal case to present evidence beyond what is relevant to disputing the elements of the offense charged or to establishing a lawful defense. Because the trial judge, in an effort to be solicitous of defense contentions, permitted evidence on issues inappropriate for jury consideration, we are now faced on appeal with the defendants' argument, among others, that their convictions should be reversed because of evidence introduced by the prosecution to rebut their own inadmissible evidence. The claim is raised on an appeal by Julio Rosado, Andres Rosado, Ricardo Romero, Steven Guerra, and Maria Cueto from judgments of the District Court for the Eastern District of New York (Charles P. Sifton, Judge) convicting them of criminal contempt of court and sentencing each appellant to three years' imprisonment. For reasons that follow, we affirm the judgments.

### Facts

This litigation is the latest chapter in the Government's persistent efforts to obtain grand jury testimony from recalcitrant witnesses regarding the activities of the Fuerzas Armadas de Liberacion Nacional Puertorriquena (Armed Forces of Puerto Rican National Liberation, or "FALN"), a terrorist group that seeks independence for Puer-

---

* The Honorable Oscar H. Davis of the U.S. Court of Appeals for the Federal Circuit, sitting by designation.

** This appeal is decided by a panel of two judges pursuant to § 0.14(b) of the Rules of this Court; Judge Kaufman, originally a member of the panel, recused himself after oral argument.

to Rico.[1] In 1977 appellants Cueto, Romero, and Andres and Julio Rosado were subpoenaed to appear before grand juries impaneled to investigate bombings attributed to the FALN.[2] The Government sought appellants' testimony and (from some of them) fingerprints, palm prints, and voice and handwriting exemplars.[3] All four refused to appear before the grand jury. Each was incarcerated pursuant to a civil contempt adjudication. Romero and Andres and Julio Rosado were released at the end of the grand jury term, after serving periods of confinement ranging from four to ten months. Cueto was released prior to the expiration of the grand jury term, after ten months of incarceration, pursuant to the District Court's determination that the civil contempt sanction had lost its coercive character and become punitive. *See In re Cueto,* 443 F.Supp. 857 (S.D.N.Y.1978).

In 1981 a new grand jury was impaneled in the Eastern District of New York to investigate bombings attributed to the FALN, as well as the May 1979 escape of suspected FALN member William Morales, a convicted federal prisoner. In November 1981 the grand jury subpoenaed Andres and Julio Rosado, Guerra, and Romero; Cueto was subsequently subpoenaed. The District Court denied appellants' timely motion to quash the subpoena and directed their appearance before the grand jury. Appellants informed the District Judge that they would refuse to answer any questions. At the Government's request, the District Court deferred imposition of a civil contempt sanction. The prosecutor informed the Court that the United States Attorney had agreed to pursue mediation with the assistance of Episcopal Bishop Paul Moore and Robert Potter, counsel for the National Council of Churches, prior to requesting sanctions for appellants' contempt.

Nine months later, on September 24, 1982, after mediation proved fruitless, the Government obtained an indictment charging appellants with criminal contempt for refusing to give evidence, in violation of 18 U.S.C. § 401(3) (1982). Shortly thereafter the Assistant Director-in-Charge of the F.B.I.'s New York Office issued a press release and held a news conference announcing appellants' arrest and calling them "the remaining unincarcerated leadership of the FALN."

On October 6, 1982, appellants moved to dismiss the indictment, alleging selective prosecution and prejudicial governmental misconduct, *i.e.,* issuing the allegedly false and prejudicial F.B.I. statement. The District Court, in reserving decision on appellants' motion, noted that the indictment failed to specify an order of the District Court defied by appellants. As appellants apparently never resisted a specific order of the District Court, the Government moved to dismiss the defective indictment, and the indictment was dismissed on November 17, 1982.

Simultaneous with dismissal of the indictment, appellants were again served with grand jury subpoenas. Appellants responded by filing a civil action against the United States, renewing allegations of selective prosecution and governmental misconduct and seeking injunctive relief staying enforcement of the grand jury subpoenas. Judge Sifton treated appellants' civil action as a motion to quash. On January 3, 1983, the District Judge declined to quash the subpoenas, determined that no abuse of the grand jury process had been shown, and directed defendants to "appear and testify before the grand jury."

Appellants remained recalcitrant. On January 19, 1983, appellants appeared before Judge Sifton. After advising appel-

---

1. *See, e.g., In re Special February 1975 Grand Jury,* 565 F.2d 407 (7th Cir.1977); *In re Archuleta,* 561 F.2d 1059 (2d Cir.1977); *In re Cueto,* 554 F.2d 14 (2d Cir.1977); *In re Rosado,* 441 F.Supp. 1081 (S.D.N.Y.1977). .

2. Cueto and Andres and Julio Rosado were subpoenaed by a grand jury in the Southern

District of New York, Romero by a grand jury in the Northern District of Illinois.

3. *See, e.g., In re Cueto,* 443 F.Supp. 857 (S.D.N.Y.1978); *In re Rosado,* 441 F.Supp. 1081 (S.D.N.Y.1977).

lants of their rights before the grand jury and explaining the consequences of their defiance of the Court's order, Judge Sifton specifically ordered appellants to appear and testify that day before the grand jury and to return to the District Court in the event that they persisted in their defiance. Later that day, following representations by appellants and Government counsel that appellants had failed to appear before the grand jury, Judge Sifton granted the Government's request to issue an order, pursuant to Fed.R.Crim.P. 42(b), directing appellants to show cause why they should not be found guilty of criminal contempt. Judge Sifton set trial for February 7, 1983.

Appellants moved for a continuance. They alleged that prejudicial pretrial publicity, exacerbated by the December 31, 1982, bombings of various federal buildings in New York City (including the United States Courthouse for the Eastern District of New York) attributed to the FALN, precluded a fair trial. At the start of jury selection, Judge Sifton denied a continuance. However, over appellants' objections, he granted the Government's request for an anonymous jury.

At trial, appellants conceded that they had willfully defied Judge Sifton's order. That concession should have narrowed the scope of the trial and left little for the jury's consideration. Instead, it served as a ploy for turning the trial away from a determination of whether the elements of the offense charged had been proved beyond a reasonable doubt into a wide-ranging inquiry into matters far beyond the scope of legitimate issues in a criminal trial. In the current fashion of mounting what some have called a "political" defense, appellants condemned United States involvement in Puerto Rico and in third world countries, alleged F.B.I. persecution of sympathizers of independence for Puerto Rico, and invited jury nullification by questioning the Government's motives in subpoenaing appellants and prosecuting them for contempt. One witness, a self-proclaimed expert on grand jury abuse, testified that the Government used the grand jury to "punish people whose political beliefs are an anathema to the Government ...." In addition, apparently making the erroneous assumption that good motive for committing a crime is inconsistent with criminal intent, appellants presented witnesses who testified that cooperation with the grand jury investigation would compromise their effectiveness as community leaders. Appellants also introduced testimony of their good character and devotion to community service.

The Government sought and was granted leave, over appellants' objection, to present limited rebuttal testimony. The rebuttal evidence was offered in response to appellants' allegations of grand jury abuse and assertions of political and religious motives for refusing to testify. The rebuttal was also prompted by Judge Sifton's ruling that he would submit to the jury the question whether appellants' offense was "petty" or "serious." Concerned about potential prejudice to appellants, Judge Sifton precluded introduction of rebuttal evidence offered to prove that appellants were members of the FALN and that they possessed information regarding FALN actions. The Court permitted testimony concerning only the seriousness of the crimes investigated and the importance of grand jury testimony as an investigative device. Three police officers described various FALN bombings and emphasized the importance of grand juries.

After more than twelve hours of deliberations, the jury convicted all appellants of "serious" criminal contempt.

### Discussion

■ Appellants raise three principal issues on appeal. First, they contend that they were denied a fair trial because of prejudicial publicity, the District Court's denial of their motion for a continuance, and the Court's explanation of the reason for anonymous jury selection. Second, appellants allege that the Government's rebuttal case impermissibly introduced irrelevant and prejudicial evidence. Third, appellants assert that the trial court failed to impose sufficient sanctions to remedy alleged

Government misconduct. We consider each issue in turn.[4]

■ 1. Appellants' fair trial claim initially challenges prejudicial publicity, allegedly attributable in large measure to the F.B.I. press release describing appellants as "the remaining unincarcerated leadership of the FALN." Upon review of the record, we are satisfied that, notwithstanding substantial pretrial publicity, appellants' trial satisfied the due process requirement of "a fair trial in a fair tribunal." *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955).

Sensitive to the risk of prejudicial publicity, Judge Sifton exercised care to assure appellants a fair trial. In conducting the voir dire, the District Judge carefully and thoroughly examined prospective jurors. At the request of the defense, he questioned members of the venire individually, thereby insulating prospective jurors from publicity to which others may have been exposed. Each juror was questioned in detail regarding exposure to media coverage of appellants or the FALN. Jurors acknowledging familiarity were probed as to whether they could decide appellants guilt solely on the basis of evidence introduced at trial. As a result of suspected or admitted bias, Judge Sifton excused ten prospective jurors. Appellants raised no substantial objections to Judge Sifton's voir dire questioning, nor proposed additional lines of inquiry in the hope of ferreting out hidden bias.

■ Appellants appear to fault the trial court's failure to impanel a trial jury completely unfamiliar with the FALN. While jurors who have formed definitive opinions about a defendant's guilt or innocence must be excused, there is no constitutional requirement that jurors come to a trial without any knowledge of the facts and issues involved. *Irvin v. Dowd,* 366 U.S. 717, 723,

81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961). Such a standard would unduly impair the Government's ability to prosecute individuals of even limited public notoriety. "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on evidence presented in court." *Id.* at 723, 81 S.Ct. at 1643.

■ We find no abuse of discretion in the District Court's refusal to grant a continuance. It is doubtful whether a continuance would have so significantly reduced the effects of publicity or the need for allegedly prejudicial security precautions as to warrant compromising the public interest in prompt disposition of criminal charges. *See, e.g., Hilbert v. Dooling,* 476 F.2d 355, 358 (2d Cir.), *cert. denied,* 414 U.S. 878, 94 S.Ct. 56, 38 L.Ed.2d 123 (1973). Whenever conducted, appellants' trial in the Eastern District of New York would have attracted considerable media coverage and required security precautions.

Indeed, appellants' claim of prejudice rings somewhat hollow. Despite Judge Sifton's careful effort to exclude any reference linking appellants to the FALN, the opening statement by Julio Rosado, appearing *pro se,* gratuitously discussed the F.B.I. press release identifying appellants as FALN leaders.

■ Appellants also challenge one aspect of the jury selection process. Though not contesting the use of an anonymous jury, *see United States v. Barnes,* 604 F.2d 121 (2d Cir.1979), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980), appellants take issue with the trial court's explanation to the jury for using this selection technique:

You were called to the jury box by number rather than by using your name. The reason for that was my decision that it

---

4. In imposing contempt sanctions federal courts should "resort to criminal sanctions only [if] the civil remedy is inappropriate." *Shillitani v. United States,* 384 U.S. 364, 371 n. 9, 86 S.Ct. 1531, 1536 n. 9, 16 L.Ed.2d 622 (1966). Though civil contempt sanctions had been imposed, without success, on Andres and Julio Rosado, Romero, and Cueto prior to this criminal contempt proceeding, a coercive remedy had not been attempted with respect to Guerra. Perhaps resort to civil contempt need not always precede criminal contempt when a grand jury witness proclaims his steadfast defiance of a grand jury's lawful demands. In any event, Guerra has not complained at trial or on appeal that a civil sanction was not attempted.

was a prudent thing to do in light of the allegations and statements that have been made concerning the connection or interest of persons using violence to achieve political objectives with this case. This remark, appellants claim, prejudicially signaled to the jury that appellants were linked to the FALN. This argument, not clearly presented to the trial court, was fully anticipated and answered by Judge Sifton's clarifying instructions (repeated on various occasions) immediately following the cited passage:

I tell you this to say in addition, that the reason for proceeding in this fashion has nothing to do with these defendants themselves. It has to do with other people not here before the Court.

2. Appellants contend that the District Court erred in permitting the Government to introduce what they claim was irrelevant and prejudicial evidence during its rebuttal case. Once the appellants were permitted to "defend" before the jury on the ground that the Government was misusing the grand jury as an instrument of political oppression, rather than seeking indictment of those responsible for serious crimes, it became entirely appropriate for the prosecution to respond with some indication of the FALN bombings that the grand jury was investigating and the obstacles encountered in determining the identities of the perpetrators. It would have been preferable to leave any issues of the lawfulness of the grand jury inquiry for determination by the Court, *cf. United States v. Myers,* 527 F.Supp. 1206 (E.D.N.Y. 1981) (court adjudication of due process claims in Abscam investigation), *aff'd,* 692 F.2d 823 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2437, 77 L.Ed.2d 1322 (1983). But the appellants, having persuaded the District Court to let them litigate before the jury the issue of the grand jury's purpose, cannot complaint that the Government was permitted to present some evidence of its side of this issue. This is not to say that "door opening" by a defendant gives the Government carte blanche to respond with all manner of prejudicial evi-

dence, *see United States v. Beno,* 324 F.2d 582, 588–89 (2d Cir.1963). Judge Sifton was careful to limit, perhaps unnecessarily, the Government's evidence, specifically rejecting evidence offered to prove appellants' membership in the FALN or their knowledge of FALN activities. Such evidence, though undeniably damaging, would have been material to refutation of defendants' claims that their motive for resisting the grand jury subpoenas was to show support for Puerto Rican independence rather than to block the apprehension of dangerous criminals. The limited evidence allowed as rebuttal was entirely appropriate.

3. Finally appellants allege numerous instances of alleged prosecutorial misconduct, which they contend warranted the sanction of setting aside the convictions. Some of the instances of alleged misconduct are frivolous: (1) the ten-month delay between their refusal to testify and the subsequent indictment, (2) their arrest notwithstanding their willingness voluntarily to appear in Court, (3) the request for an anonymous jury, (4) references in the prosecutor's opening statement to the authority of the Court, and (5) the prosecution's recital of the order directing appellants to appear before the grand jury, a document properly in evidence. Three incidents are more plausibly challenged: (1) the F.B.I. press release identifying appellants as FALN members, (2) the arguably improper cross-examination of a defense witness, and (3) the *ex parte* submission of a sealed sentencing memorandum to the District Judge.

It is far from clear that any of these three episodes are properly characterized as misconduct. There may well be a legitimate public interest in identifying an indicted person as a member of the FALN, though release of this fact arguably contravened Justice Department guidelines. 28 C.F.R. § 50.2 (1983). In any event, Judge Sifton more than adequately guarded against the risk of trial prejudice from this pretrial disclosure by his meticulous care during jury selection and his exclusion of evidence of FALN membership even after

appellants' defense made such evidence material.

■ The challenged cross-examination occurred during the testimony of Bishop Roger Blanchard, who had testified to his favorable opinion of defendant Cueto and her good works as executive director of the National Commission on Hispanic Affairs, an agency created by the executive council of the Episcopal Church. After explicitly being allowed by the District Judge to probe the Bishop's knowledge of whether the Commission was "a front for other activities than those which he's described," the prosecutor asked whether funds and equipment of the Commission had been used by a group for violent purposes. Objection was interposed before the answer. In the ensuing colloquy, the Court said, "This goes beyond what we discussed earlier," and later added, "I have heard an area which you haven't inquired about. If you want to go into that area, please do." When the prosecutor returned to the topic of using Commission funds to promote violence, an objection was sustained only as to form. The question was rephrased with specific reference to the Bishop's knowledge of funds and equipment purchased by the Commission being used for a "Queens bomb factory." That question, also not answered, drew motions for a mistrial and a sidebar rebuke from the District Judge. Though it would have been preferable, in light of the prior colloquy, to have secured the Court's permission to use specific examples in questioning the Bishop about his knowledge of the Commission's "front" activities, the failure to do so was not misconduct. The topic had been ruled proper for inquiry, and the prosecutor had a good faith basis for asking the question.

■ The *ex parte* submission by the prosecutor of a sealed sentencing memorandum arose from the following circumstances. The District Court advised counsel to inform the Probation Department of any factual information bearing on sentencing and noted that anyone doing so "has a right to seek confidentiality with regard to their disclosures." Numerous facts reported by the Government to the Probation Department concerning defendants' activities appeared in the presentence report. Thereafter, the Government offered to present to the Court a sentencing memorandum detailing the basis for these factual assertions; the prosecutor requested that the memorandum be considered initially *in camera* with subsequent disclosure to the defense. Receiving no ruling on this request and confronted with the defendants' denial of the factual assertions in the presentence report, the prosecutor submitted a sentencing memorandum to the Court. It was made clear that the defense had not been served but would be when the Court directed. The Court thereafter ruled that the Government's memorandum would not be considered *in camera* and rejected the document without reading it. The prosecutor then served the document on the defendants and filed it with the Court. Thereafter the defendants obtained an order from the Court directing the prosecutor to show cause why adverse action should not be taken against him for the initial *ex parte* submission of the sentencing memorandum. Ultimately, the Court characterized the prosecutor's action as a "procedural lapse" and excluded the memorandum from the sentencing proceeding. Since the Court had invited a request for confidentiality concerning sentencing materials and since some details underlying factual allegations pertinent to sentencing are entitled to confidentiality, Fed.R.Crim.P. 32(c)(3), we see no basis for the defendants' claim of governmental misconduct. It will normally be preferable, however, for both sides to confine their *ex parte* presentations of sentencing information to the Probation Department in the absence of explicit permission to submit confidential materials directly to the Court.

■ In view of the overwhelming and undisputed evidence that the defendants were guilty of the offense charged, the matters complained of were, in any event, harmless and do not remotely provide any basis for reversal. *See United States v.*

*Hasting,* —— U.S. ——, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983).

The judgments of the District Court are affirmed. The mandate shall issue forthwith.