UNITED STATES of America, Appellee,

v.

Rafael ROMERO, a/k/a "Ralphy", Albert Rodriguez and Rafael Santos, Defendants–Appellants.

Nos. 444, 855 and 445, Dockets 89–1264, 89–1265 and 89–1266.

United States Court of Appeals, Second Circuit.

Argued Jan. 17, 1990.

Decided Feb. 20, 1990.

Mary Lee Warren, Asst. U.S. Atty. (Otto G. Obermaier, U.S. Atty., New York, N.Y., Howard E. Heiss, and Daniel C. Richman, Asst. U.S. Attys., of counsel), for appellee.

Kenneth I. Wirfel, New York City (Rosenblatt, Mass, Wirfel & Stolz, P.C., of counsel), for appellant, Rafael Romero.

David J. Goldstein, Bronx, N.Y. (Goldstein, Weinstein & Fuld, of counsel), for appellant, Albert Rodriguez.

Stuart London, Ryebrook, N.Y. (Martin Fidler, of counsel), for appellant, Rafael Santos.

Before FEINBERG, PRATT and MAHONEY, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Defendants Rafael Romero, Albert Rodriguez, and Rafael Santos appeal from judgments entered against them in the United States District Court for the Southern District of New York, Robert J. Ward, *Judge,* convicting them of multiple crimes arising from their participation in narcotics trafficking in New York City.

Because we find no merit in any of the assorted contentions the defendants raise on appeal, we affirm the conviction of each defendant on each count upon which he was convicted.

## I. BACKGROUND

In September 1988 defendants Romero and Rodriguez sold cocaine to two Drug Enforcement Administration (DEA) confidential informants in an apartment used for a large-scale drug trafficking operation. Santos hid in a strategically located hall closet, armed with a .357 Magnum revolver, as look-out "in case anything went wrong". As DEA agents raided the apartment, arresting Romero and wrestling Rodriguez to the floor, Santos shot one of the agents in the face, seriously wounding him. A volley of bullets followed, injuring Santos and one of the informants.

Prior to trial, the district court denied motions to suppress a post-arrest statement made by Santos, to sever the trials, and for a continuance. After a jury trial, defendants were convicted of conspiring to distribute more than five kilograms of cocaine, 21 U.S.C. § 846; possession of approximately one kilogram of cocaine with intent to distribute, 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B); conspiring to murder a federal officer, 18 U.S.C. § 1117; attempted murder of a federal officer, 18 U.S.C. §§ 1111 and 1114; assaulting a federal officer with a deadly weapon, 18 U.S.C. § 111; and use of a firearm during

the course of a narcotics trafficking offense, 18 U.S.C. § 924(c). Santos was also convicted of receipt and possession of a firearm with a defaced serial number, 26 U.S.C. §§ 5861(h) and 5871.

Each defendant received concurrent sentences of life imprisonment on each of the conspiracy charges, twenty years for attempted murder, ten years each for the assault and the possession, as well as a consecutive sentence of five years for use of a firearm. In addition Santos was sentenced to five years for receipt of a defaced firearm, to run concurrently with the other weapons charge.

On appeal, defendants argue that there was insufficient evidence to convict on the conspiracy charges and on some of the substantive charges. They challenge the court's refusal to suppress Santos's post-arrest statement, to sever Santos's trial, to grant a continuance, and to instruct the jury on a lesser charge of manslaughter. Santos also challenges his sentence. We find no merit to any of these arguments.

## II. DISCUSSION

A. Sufficiency of the Evidence.

Defendants claim that the evidence was insufficient to support the jury's guilty verdicts on the conspiracy charges and on most of the substantive counts. We are not persuaded.

A defendant challenging the sufficiency of the evidence bears a heavy burden. *United States v. Casamento,* 887 F.2d 1141, 1156 (2d Cir.1989); *United States v. Rastelli,* 870 F.2d 822, 827 (2d Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 515, 107 L.Ed.2d 516 (1989). On review, we determine only if there is substantial evidence to support the jury's findings, viewed in the light most favorable to the government. *Id.; see Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). There is sufficient evidence to uphold a conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307,

319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

### 1. *Conspiracy.*

All three defendants claim that there was insufficient evidence to establish their participation in either the conspiracy to distribute more than five kilograms of cocaine or the conspiracy to murder a federal officer. For the reasons below, we reject their claims.

The essential element of a conspiracy is an agreement to accomplish an unlawful act. *United States v. Wardy*, 777 F.2d 101, 107 (2d Cir.1985), *cert. denied*, 475 U.S. 1053, 106 S.Ct. 1280, 89 L.Ed.2d 587 (1986). A conspiracy may be established through circumstantial evidence, *United States v. Tutino*, 883 F.2d 1125, 1129 (2d Cir.1989), which need only tend to show a tacit understanding to carry out the prohibited conduct. *Wardy*, 777 F.2d at 107. A conspirator need not be proven to have known of all the details of the broader conspiracy; there need only be " 'some evidence from which it can reasonably be inferred that the person charged * * * knew of the existence of the scheme * * * and knowingly joined and participated in it.' " *United States v. Nusraty*, 867 F.2d 759, 763 (2d Cir.1989), *quoting United States v. Gaviria*, 740 F.2d 174, 183 (2d Cir.1984).

The evidence, which must be viewed as a whole, *United States v. Martino*, 759 F.2d 998, 1003 (2d Cir.1985), showed that Rodriguez was running a sophisticated narcotics operation with the help of Romero and Santos. The initial, probationary deal with the informants was for a relatively large amount of cocaine, two kilos for $35,000; there were at least two apartments involved, one for storage and one for distribution; and other drug operations were going on simultaneously in the distribution apartment. Moreover, Romero told the informants that he had known Rodriguez for some time and had sold drugs for him before. He also promised that more cocaine, as much as the informants wanted or needed, would be available in the future. In fact, there was more cocaine available that day, although it was not offered to the informants. Finally, both Rodriguez and Romero were concerned about security. They frisked the informants to check for weapons or evidence of police presence, the apartment had a specially rigged warning system with which both were familiar, and Santos was armed and posted as an enforcer.

■ Santos argues that since he was hiding in the closet during the entire transaction, he neither possessed the cocaine nor participated in the drug deal, and so could not be part of the narcotics conspiracy. It is clear that Romero and Rodriguez agreed to sell cocaine to the informants. The jury could also reasonably have inferred that Santos was there to protect the drug deal and the dealers. From the closet, he could see drugs and paraphernalia with the door open and even when the door was closed he could overhear the conversation. He lay in wait in case the deal was interrupted, and when DEA agents entered the apartment, he performed his part of the plan by firing upon them. A reasonable jury could conclude that Santos knew of the plan to sell narcotics and knowingly participated in it.

■ Romero and Rodriguez admit they conspired with respect to two kilos of cocaine, but they argue that there was insufficient evidence to support their convictions of conspiring to distribute more than five kilos. They assert that the agreement with the DEA informants was for only two kilos and that there was no agreement for more than that. But there was much more than a simple agreement to sell two kilos: there was Romero's promise to the informants to provide an unlimited amount in the future; there was a nearby source from which Rodriguez quickly produced the two kilos; there was more cocaine in the apartment being prepared for distribution; and there were indications of past and future cooperation between Romero and Rodriguez. On these facts there was sufficient evidence for the jury to conclude not only that the defendants had agreed to sell two kilos to these informants, and that they sought to supply them with an unlimited amount in the future, but also that they had been and

continued to be engaged in a substantial multi-kilo operation to distribute cocaine.

Defendants also argue that there was not sufficient evidence to convict them of conspiring to murder a federal officer because there was no agreement to murder anyone and because neither Romero nor Rodriguez even knew that Santos was in the closet.

■ The evidence, however, indicates that there was a drug deal, that Romero and Rodriguez took many precautions against detection and arrest, that the apartment was strewn with ammunition in open view, and that Santos had been deliberately stationed in the closet. At the least, the jury could reasonably have found that Romero and Rodriguez knew that Santos was positioned out of sight, armed and ready to shoot. From this conclusion, a reasonable jury could infer that Santos's taking up a strategic position in the closet while Romero and Rodriguez conducted their narcotics business did not occur by chance, but rather was the result of a plan agreed to by all the defendants to kill anyone posing a threat to them or the business.

■ Santos lay in wait and, as intended, shot an agent who was threatening the conspirators and the deal. It was not necessary that the defendants knew their ultimate victim was a federal officer. "[S]uch knowledge is * * * irrelevant" because a conspiracy to murder a federal officer requires only the conspiracy to murder, not the specific knowledge of the identity of the victim. *United States v. Feola,* 420 U.S. 671, 694–96, 95 S.Ct. 1255, 1268–70, 43 L.Ed.2d 541 (1975).

We hold, therefore, that the evidence was sufficient for a rational trier of fact to find Romero, Rodriguez, and Santos each guilty of both the conspiracy to distribute narcotics and the conspiracy to murder a federal officer.

### 2. *The Substantive Charges.*

Defendants argue that there was insufficient evidence to convict them on some of the substantive charges connected to the

conspiracies. Romero and Rodriguez claim that they did not possess the gun used by Santos or participate in the shooting, so they cannot be liable for the weapons, attempted murder, and assault charges. Santos, contending he did not possess the drugs, had no control over them, and took no part in the negotiation and sale of them, asserts that he cannot, therefore, be held culpable for possession of cocaine. We reject these arguments based on the co-conspirator liability theory of *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

Under a *Pinkerton* theory, a conspirator "can be held responsible for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not himself participate in the substantive crimes." *United States v. Bruno,* 873 F.2d 555, 560 (2d Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 125, 107 L.Ed.2d 86 (1989); *Pinkerton,* 328 U.S. at 647, 66 S.Ct. at 1184. Whether a particular crime is foreseeable and in furtherance of the conspiracy is a factual matter for the jury. *Bruno,* 873 F.2d at 560.

■ Given the ammunition spread around the apartment, the precautions Romero and Rodriguez took to ensure the informants were neither armed nor police, and the stationing of Santos as an armed triggerman in the closet, the jury had ample evidence from which to conclude the conspirators had contemplated and prepared for using the gun. Under these circumstances, there was sufficient evidence to conclude that Santos's use of the gun was a reasonably foreseeable consequence of the narcotics conspiracy.

■ Further, it is uncontroverted that Santos lay in wait with a firearm for the purpose of protecting the narcotics deal. He emerged from the closet to shoot a federal agent in the face, seriously wounding him and only by chance failing to kill him. A jury could reasonably conclude that Santos's actions were in furtherance of the narcotics conspiracy as well as the

**52**

conspiracy to kill anyone threatening the dealers or the deal.

■ Moreover, "a conspira[cy] is presumed to continue * * * until the last overt act of any of the conspirators." *United States v. Menendez*, 612 F.2d 51, 54 (2d Cir.1979). Romero and Rodriguez may reasonably be found guilty for their co-conspirator's shooting of the agent as the last foreseeable act in furtherance of the narcotics and murder conspiracies.

■ Finally, Santos claims that he was merely a "hired gun", unaware of the nature of the "business transactions" taking place. On this record the jury was entitled to reject that claim as incredible. By remaining in the closet to protect those "business transactions", he joined the narcotics conspiracy, and the reasonably foreseeable acts of his co-conspirators are attributable to him. Since it is undisputed that Romero and Rodriguez possessed cocaine with the intent to distribute it as the goal of the narcotics conspiracy, a reasonable jury could have found there was sufficient evidence to find Santos guilty of the same crime.

We thus conclude that a rational jury could have found the possession of drugs during a drug deal, the use of the gun during the drug offense, the attempted murder of a federal officer by lying in wait, and the actual assault of the officer all to be reasonably foreseeable consequences of acts done in furtherance of the underlying conspiracies. Thus, we hold that the convictions of the defendants on these substantive counts were supported by sufficient evidence.

**B. Other Claims.**

In seeking to overturn their convictions, defendants assert various other challenges to the district court's rulings. Although we find no merit in these contentions, we address them briefly.

**1. *Suppression of Santos's post-arrest statement.***

Santos argues that the district court erroneously admitted into evidence a post-arrest statement he made while in a hospital emergency room. Santos was wounded in the hand and leg by gunfire during the raid. He was taken to a hospital for treatment where he made a statement recounting the events to an attending nurse. Santos contends that the statement should have been suppressed either because he had not been given *Miranda* warnings properly or because the statement was not voluntary. The issue of the voluntariness of a statement is a legal question which we review *de novo*. *Miller v. Fenton*, 474 U.S. 104, 115, 106 S.Ct. 445, 452, 88 L.Ed.2d 405 (1985); *Green v. Scully*, 850 F.2d 894, 900 (2d Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 374, 102 L.Ed.2d 363 (1988).

■*Miranda* rights protect suspects in custody from being coerced into giving incriminating evidence against themselves by law enforcement officials. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); *see Arizona v. Mauro*, 481 U.S. 520, 529–30, 107 S.Ct. 1931, 1936–37, 95 L.Ed.2d 458 (1987); *Colorado v. Connelly*, 479 U.S. 157, 170, 107 S.Ct. 515, 524, 93 L.Ed.2d 473 (1986). However, *Miranda* does not apply to incriminating statements made to private persons in the absence of police subterfuge or intimidation. *Mauro*, 481 U.S. at 529–30, 107 S.Ct. at 1936–37; *Connelly*, 479 U.S. at 166, 107 S.Ct. at 521; *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980); *see United States v. Antonelli*, 434 F.2d 335, 337 (2d Cir.1970). Santos's statement was made to a nurse, a private party, during the routine performance of medical duties without any indication of law enforcement influence. "Since [Santos's] statements were made to [a private person,] not law enforcement officers or their agents * * * no warnings need have been given." *Antonelli*, 434 F.2d at 337–38.

Further, "coercive police activity is a necessary predicate to the finding that a [statement] is not 'voluntary'". *Connelly*, 479 U.S. at 167, 107 S.Ct. at 522. In this case, there was no evidence presented that police coercion or activity had any relation to Santos's statement to the nurse. Thus,

his statement was voluntary. *See United States v. Borchardt*, 809 F.2d 1115, 1118–19 (5th Cir.1987) (incriminating statements made to attending nurse and overheard by prison official did not require *Miranda* warnings or suppression). The district court did not err in refusing to suppress the statement.

### 2. *Severance.*

Romero and Rodriguez claim that the district court abused its discretion in refusing to sever Santos's trial. They assert that severance was required because Santos's statement contained references to them which were incriminating and its admission at their joint trial prejudiced their defense in violation of their *Bruton* rights. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

*Bruton* held that a post-arrest statement made by a nontestifying defendant which facially incriminates a co-defendant is inadmissible at their joint trial despite a limiting instruction to the jury because it violates the co-defendant's right to cross-examination. 391 U.S. at 126, 88 S.Ct. at 1622. However, a statement by a nontestifying defendant which does not facially incriminate a co-defendant is admissible in a joint trial provided a limiting instruction is given. *Tutino*, 883 F.2d at 1135; *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987).

■ In this case, the district court redacted Santos's statement to eliminate any directly incriminating references to his co-defendants and gave the jury a proper limiting instruction. "[W]hether a co-defendant's statement would be incriminating when linked to other evidence in this case is not relevant" or sufficiently prejudicial to require severance. *Tutino*, 883 F.2d at 1135. Severance is left to the discretion of the district court, *id.* at 1130, and we hold that there was no abuse of discretion by the court in refusing to order separate trials here.

### 3. *Continuance.*

Just prior to trial, Romero requested a continuance on the ground that publicity about a recent drug-related murder of a DEA agent in New York City would prejudice his trial. The district court denied the motion and Romero claims this was error.

When pretrial publicity amounts to a "wave of public passion" creating a presumption of prejudice, a continuance may be required to ensure a fair and impartial trial. *Patton v. Yount*, 467 U.S. 1025, 1031–33, 104 S.Ct. 2885, 2888–90, 81 L.Ed.2d 847 (1985); *United States v. Rosado*, 728 F.2d 89, 94 (2d Cir.1984). However, a continuance should be granted only where it would significantly reduce the effects of publicity and warrant compromising the public interest in prompt disposition of criminal charges. *Rosado*, 728 F.2d at 94. "The relevant question is * * * whether the jurors at [Romero's] trial had such fixed opinions that they could not judge impartially the guilt of the defendant." *Yount*, 467 U.S. at 1035, 104 S.Ct. at 2891. That determination is made by the district court in its discretion and may be overturned only for clear abuse. *Rosado*, 728 F.2d at 94.

■ Here, the district court determined that the possibility of prejudice due to publicity about a different incident in a city where drug-related murders of law enforcement agents are not uncommon did not overcome the public interest in prompt resolution of the case. Instead, the court took less drastic measures to insure impartiality: asking for jurors' assurances not to consider media reports of unrelated incidents; immediately excusing those jurors who acknowledged doubts about their impartiality; and giving defendants an expanded *voir dire*. The district court's denial of a continuance was not an abuse of discretion.

### 4. *Santos's sentence.*

Santos asks this court to modify his sentence downward. He argues that the district court failed to consider his actual role in the events as well as his history and character. Santos asserts that had the court considered these factors, it might have determined that he was a minor par-

ticipant, justifying a lesser sentence, or that there were mitigating circumstances, warranting a downward departure. He also argues that he should not have been sentenced more severely on the conspiracy charges than he was on the substantive counts.

 At his sentencing, the district court found that the evidence showed that Santos played an active, fully culpable role in the offenses. Given that he lay in wait, shot a federal agent, and was found by the jury to have intended to kill the agent, the finding that he was not less culpable than his co-defendants, *see* United States Sentencing Commission, *Guidelines Manual* [hereinafter *Guidelines*], § 3B1.2 (mitigating role), was not clearly erroneous. 18 U.S.C. § 3742(e). Moreover, the district court gave Santos full credit for his "clean record" by calculating his criminal history at the lowest possible level. *Guidelines*, §§ 4A1.1; 5A Ch. 5, Pt. A (sentencing table). Further, Santos has no complaint because he was sentenced more severely on the conspiracy convictions than on the substantive convictions. *See* 21 U.S.C. § 846. The sentences were within their respective guideline ranges, and we give deference to the district court's application of the guidelines to the facts. 18 U.S.C. § 3742(e). Finally, insofar as Santos complains about the district court's failure to grant a downward departure, such decisions are not reviewable by this court. *United States v. Colon*, 884 F.2d 1550, 1552 (2d Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989).

5. *The "lesser included" charge of manslaughter.*

 Santos complains that the district court erred by failing to charge the jury on voluntary manslaughter as a lesser included offense of the murder conspiracy and attempted murder charges. This claim is frivolous, because it was waived. Santos concedes that he never sought the instruction at trial, nor did he object when it was not given at trial. Thus, he has waived his right to that jury charge. *United States v.*

*DiTommaso*, 817 F.2d 201, 211 (2d Cir. 1987).

## III. CONCLUSION

The judgments of conviction are affirmed as to all defendants.