UNITED STATES of America, Appellee,

v.

Thomas MASOTTO, Defendant–Appellant.

No. 38, Docket 94–1666.

United States Court of Appeals,
Second Circuit.

Argued Sept. 20, 1995.

Decided Jan. 3, 1996.

Alan S. Futerfas, New York City, and John L. Pollok, Hoffman & Pollok, New York City (Michael Rosen, New York, NY, of counsel), for Defendant–Appellant.

James Orenstein, Assistant United States Attorney, Brooklyn, NY (Zachary W. Carter, United States Attorney for the Eastern District of New York, Susan Corkery, Mark O. Wasserman, Assistant United States Attorneys, of counsel), for Appellee.

Before: OAKES, MINER and MAHONEY, Circuit Judges.

MINER, Circuit Judge:

Defendant-appellant Thomas Masotto appeals from a judgment of conviction and sentence entered in the United States District Court for the Eastern District of New York (Platt, then-Chief Judge) following a jury trial. A superseding indictment charged Masotto with racketeering in violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(c) (count one), racketeering conspiracy in violation of RICO, 18 U.S.C. § 1962(d) (count two), conspiracy to commit arson of an FBI surveillance post in violation of 18 U.S.C. § 371 (count three), arson of the surveillance post in violation of 18 U.S.C. § 844(f) (count four),

destruction of government property in violation of 18 U.S.C. § 1361 (count five), conspiracy to commit robbery between March of 1991 and June of 1992 in violation of 18 U.S.C. § 1951 (count six), robbery of an All–Pro Air Delivery Service truck (the "All–Pro truck") in violation of 18 U.S.C. § 1951 (count seven), robbery of a truck owned by Harold Levinson and Associates (the "Levinson truck") in violation of 18 U.S.C. § 1951 (count eight), conspiracy to steal from an interstate shipment in violation of 18 U.S.C. § 371 (count nine), theft from interstate shipment of telephones in violation of 18 U.S.C. § 659 (count ten), conspiracy to make extortionate extensions of credit in violation of 18 U.S.C. § 892 (count eleven), conspiracy to use extortionate means to collect extensions of credit in violation of 18 U.S.C. § 894 (count twelve), conspiracy to commit credit card fraud in violation of 18 U.S.C. § 1029(b)(2) (count thirteen), credit card fraud in violation of 18 U.S.C. § 1029(a)(2) (count fourteen), using and carrying a firearm during the robbery of the All–Pro truck in violation of 18 U.S.C. § 924(c)(1) (count fifteen), and using and carrying a firearm during the robbery of the Levinson truck in violation of 18 U.S.C. § 924(c)(1) (count sixteen). The jury found Masotto guilty of counts one through seven and counts nine through 15. The district court sentenced Masotto to a 248–month term of imprisonment, a 6–year term of supervised release, and a $700 special assessment.

On appeal, Masotto contends, *inter alia,* that the district court erred in its jury instructions regarding the counts charging racketeering and use of a firearm, and that there is insufficient evidence to sustain his conviction on the § 924(c) violation. For the reasons that follow, we affirm.

## BACKGROUND

In July of 1990, the Federal Bureau of Investigation ("FBI") began conducting an investigation of Masotto, who was believed to be an associate of the Gambino Organized Crime Family of La Cosa Nostra. As part of the investigation, the FBI established a surveillance post in a building located on the same street as Michael's Ristorante, a res-

taurant owned and operated by Masotto and located on Woodcleft Avenue in Freeport, New York. In January of 1991, Masotto discovered the FBI surveillance post and enlisted a friend, Frank Scerbo, and one of Scerbo's acquaintances, Joseph Lucas, to burn down the building containing the surveillance post. On February 22, 1991, Lucas set fire to the building.

Following the arson, according to the government, Lucas, Scerbo, and another of Masotto's friends, Peter Bertuglia, formed a crew (the "crew") with Masotto as the leader. These men formed the crew for the principal purpose of enriching themselves by committing a variety of crimes. Masotto purportedly was a member of the Gambino Family, and consequently was able to provide the crew members with the necessary "backing" to commit their crimes. He could protect the crew from competing crime organizations and could provide a network for distributing the proceeds of the crimes. Eventually, other persons, including Michael Varone and Dave Amato, joined the crew.

In June of 1991, the crew began to hijack trucks carrying commercial goods. On June 18, 1991, Lucas and other crew members stole a truck containing approximately 150 cases of telephones. Masotto allegedly helped the crew store the truck and sell the telephones. In addition, Masotto personally received some of the stolen telephones as well as proceeds from their sale. On July 23, 1991, the crew hijacked the All–Pro truck containing a shipment of yarn. During the course of the robbery, Lucas and Amato carried guns, and Amato used a gun to force the driver from the truck. On October 22, 1991, the crew hijacked the Levinson truck containing a load of cigarettes. The government contended that Masotto was aware that the crew members were using guns during the robberies. The crew planned and executed additional truck hijackings and robberies in 1991 and 1992. In addition to these crimes, the crew engaged in a variety of other criminal activities.

In June of 1992, Varone, Lucas, and other members of the crew were arrested after an investigation by the Suffolk County District Attorney's Office. Following their arrests,

Varone, Lucas, Scerbo, and Bertuglia agreed to cooperate with the government in its investigation of Masotto.

In December of 1992, a grand jury returned an indictment against Masotto charging him with several crimes. On September 23, 1993, the superseding indictment was filed, and Masotto's trial commenced in January of 1994. Following the completion of all testimony, the district court held a conference pursuant to Rule 30 of the Federal Rules of Criminal Procedure to discuss the proposed jury instructions. Thereafter, on February 22, 1994, the court instructed the jury. Masotto objected to the court's instruction on the elements of the RICO offenses charged in counts one and two of the indictment because the instruction did not contain language from the Supreme Court's decision in *Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). Masotto also objected to the district court's instruction on count 15, which allowed the jury to convict Masotto of using and carrying a firearm either under an aiding and abetting theory of liability or under a *Pinkerton* theory of liability. *See Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

The jury returned its verdict on February 28, 1994. This appeal followed the imposition of the sentence.

## DISCUSSION

### I. Jury Instruction on the Elements of RICO

Masotto contends that the district court erroneously instructed the jury with respect to counts one and two of the indictment relating to the RICO violations. Masotto contends that the jury instruction on the elements of RICO was erroneous because it failed to include the "operation or management" language from the Supreme Court's decision in *Reves*. The government, however, claims that Masotto has waived this contention because he did not object properly to the district court's instruction at trial.

### A. Preservation of Objection

■ Federal Rule of Criminal Procedure 30 provides in pertinent part: "No party may assign as error any portion of the [jury] charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." The objection "must direct the trial court's attention to the contention that is to be raised on appeal." *United States v. Scarpa*, 913 F.2d 993, 1020 (2d Cir.1990) (quotation omitted). The purpose of this provision is to provide the trial court with an opportunity to correct any error in the jury instructions before the jury begins deliberating. 2 Charles A. Wright, *Federal Practice and Procedure* § 484, at 698 (1982).

In the present case, the record indicates that Masotto repeatedly requested that the district court include the *Reves* language in its jury instruction on the elements of RICO and objected when the court failed to include the *Reves'* "operation or management" language in its instruction.[1] Request number 11 of Masotto's proposed jury instructions contained the "operation or management" language of *Reves*.[2] In addition, at the Rule 30 Conference, Masotto's counsel mentioned

---

1. The district court's instruction provided in relevant part:
 [W]hen the statute requires that the affairs of the enterprise be participated in or conducted through a pattern of racketeering activity it requires the government to prove that there was a meaningful connection between the unlawful or racketeering acts of the defendant and the affairs of the enterprise. That is to say, the government is required to prove that the unlawful racketeering act in some way related to the activities of the enterprise or that the defendant was able to commit the acts *solely by virtue of his position or involvement in the enterprise.*

2. Request number 11 of Masotto's proposed instructions provided:
 The government must prove that the defendant conducted, or participated in, the affairs of the enterprise by *participating in the operations and management of the enterprise itself.* Therefore, the government must prove beyond a reasonable doubt, that the pattern of racketeering activity committed by the defendant, if any, concerned or related to the day to day operations or management of an existing enterprise. (emphasis added).

the *Reves* decision when discussing the proposed jury instruction relating to the elements of RICO. Masotto's counsel stated that "when you are going into defining how those elements [are] to be established or not established, then I guess there is the best place to put the law as recited by the Supreme Court in the *Reves* case." While the court was reviewing the government's proposed instruction on the elements of RICO, Masotto's counsel asserted that "there is no language in there ... from the *Reves* [case]" and requested that the court adopt the language contained in request number 11 of his proposed instructions. Finally, after the court instructed the jury, Masotto's counsel stated:

> We had requested an instruction based on the Reeve's [sic] decision. I didn't hear any language on—my understanding is that your Honor ruled on that and decided not to include that language.... We might have had it under our first set of requests to your Honor's instructions under Reeve's [sic], talking about that decision, the extent to which an individual must participate. That's what the Reeve's [sic] decision was about.

Although Masotto repeatedly objected to the district court's instruction on the grounds that it did not contain language from *Reves*, he never specified that he objected to the absence of the "operation or management" language of *Reves*. Nevertheless, Masotto's reference to his proposed instruction containing the *Reves* "operation or management" language, combined with his constant reference to the *Reves* case, were sufficient to direct the district court to his contention. Therefore, we believe that Masotto properly preserved his objection. Accordingly, we address Masotto's claim that the district court's jury instruction was erroneous.

### B. *Merits of Objection to RICO Instruction*

 We review a district court's jury instruction *de novo*. *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir.1994). "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Id.* An

erroneous instruction requires a new trial unless the error is harmless. *Id.*

 Under 18 U.S.C. § 1962(c), it is unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, *to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs* through a pattern of racketeering activity or collection of unlawful debt." (emphasis added). Masotto contends that in light of *Reves*, the district court's jury instruction does not enunciate properly the language of § 1962(c).

In *Reves*, the Supreme Court examined § 1962(c) and adopted an "operation or management" test to determine whether a defendant had a sufficient connection to an enterprise to warrant imposing liability. *See* 507 U.S. at 178, 113 S.Ct. at 1170. The Court held that " 'to conduct or participate, directly or indirectly, in the conduct of such enterprises's affairs,' § 1962(c), one must participate in the operation or management of the enterprise itself." *Id.* at 184, 113 S.Ct. at 1173. The Court explained that under the "operation or management" test, a defendant must have "some part in directing the enterprise's affairs." *Id.* at 178, 113 S.Ct. at 1170. In addition, the Court stated that "[a]n enterprise is 'operated' not just by upper management but also by lower-rung participants in the enterprise who are under the direction of upper management." *Id.* at 184, 113 S.Ct. at 1173. However, the Court declined to determine "how far § 1962(c) extends down the ladder of operation." *Id.* at 184 n. 9, 113 S.Ct. at 1173 n. 9.

We agree with Masotto that the district court's instruction did not comport with the requirements of the statute as interpreted in *Reves*. The district court's instruction addressed § 1962(c)'s provision that a defendant "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs" as requiring "the government to prove that there was a meaningful connection between the unlawful or racketeering acts of the defendant and the affairs of the enterprise." The instruction required the government to prove only that the racketeering act was "in some way related to the activities of

the enterprise" or that the defendant was enabled to commit the acts only by reason of his involvement or position in the enterprise. The language of the instruction does not include the *Reves* "operation or management" test because the district court failed to explain that the defendant must participate in the "operation or management" of the enterprise. Therefore, the instruction given by the district court was erroneous.

### C. Harmless Error

 Although the district court erred in instructing the jury, that error does not necessarily require a reversal. "[E]rrors that do not affect the substantial rights of the defendant are harmless and do not compel the reversal of a criminal conviction." *United States v. Mussaleen*, 35 F.3d 692, 695 (2d Cir.1994); *see also* Fed.R.Crim.P. 52(a). An error is deemed harmless if we are convinced that the error did not influence the jury's verdict. *Mussaleen*, 35 F.3d at 695.

 In the present case, the district court's failure to instruct the jury that Masotto must have been involved in the "operation or management" of the enterprise could not have influenced the jury's verdict on the RICO violations. The government's contention at trial was that Masotto was the leader of the crew. As Masotto's counsel stated, under the government's theory, "the crux of the entire case" was whether Masotto was "a leader and associated with the enterprise and sent other people to do these things, these [criminal] acts." Indeed, the evidence at trial indicated that Masotto's only role within the crew was that of a leader. Therefore, the jury only could have found that Masotto either was the leader of the crew or was not a crew member at all. Consequently, the district court's failure to instruct the jury that it must find Masotto to have been involved in the "operation or management" of the crew could not have affected the jury's verdict, because the jury only could have found Masotto guilty based upon his leadership and management of the crew. Accord-

ingly, the district court's error was harmless and does not require reversal.

### II. Jury Instruction on 18 U.S.C. § 924(c)

Masotto contends that the district court erred in instructing the jury on count 15, which charged Masotto with using a firearm in connection with the All–Pro truck robbery in violation of 18 U.S.C. § 924(c).[3] The district court instructed the jury that it could find Masotto guilty of violating § 924(c) either under an aiding and abetting theory of liability or under a *Pinkerton* theory of liability.

### A. Pinkerton Instruction

 Under the *Pinkerton* theory of liability, a conspirator "can be held responsible for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not himself participate in the substantive crimes." *United States v. Romero*, 897 F.2d 47, 51 (2d Cir.1990) (quotation omitted), *cert. denied*, 498 U.S. 1092, 111 S.Ct. 975, 112 L.Ed.2d 1060 (1991). The district court instructed the jury that in order to find Masotto guilty of violating § 924(c) under the *Pinkerton* theory, it must find, *inter alia*, that Masotto was guilty of the conspiracy to commit robbery charged in count six, and that the use of a firearm was reasonably foreseeable and in furtherance of that conspiracy.

Masotto contends that the *Pinkerton* instruction was inappropriate in light of this court's decision in *United States v. Medina*, 32 F.3d 40 (2d Cir.1994). In *Medina*, we held that a jury must find that the defendant "performed some act that directly facilitated or encouraged the use or carrying of a firearm" in order to convict under § 924(c). *Id.* at 45. Masotto contends that because the district court's *Pinkerton* instruction did not require a finding that Masotto "facilitated or encouraged the use or carrying of a firearm," the *Pinkerton* instruction should not have

---

3. Under § 924(c), whoever uses or carries a firearm in relation to a crime of violence must be sentenced to a five-year term of imprisonment, consecutive to the punishment imposed for the violent crime.

**1240**

been given in connection with § 924(c). We disagree.

It is well-settled in this Circuit that a jury may be instructed on the *Pinkerton* theory of liability in connection with a charged violation of § 924(c). *See Romero,* 897 F.2d at 51 (upholding § 924(c) conviction under *Pinkerton* theory); *United States v. Bruno,* 873 F.2d 555, 560 (2d Cir.) (same), *cert. denied,* 493 U.S. 840, 110 S.Ct. 125, 107 L.Ed.2d 86 (1989). Other circuits are in agreement. *See, e.g., United States v. Jackson,* 65 F.3d 631 (7th Cir.1995) (upholding § 924(c) conviction under *Pinkerton* theory); *United States v. Dean,* 59 F.3d 1479 (5th Cir.1995) (same); *United States v. Resko,* 3 F.3d 684 (3d Cir. 1993) (finding evidence sufficient to uphold § 924(c) conviction under *Pinkerton* theory); *United States v. Cummings,* 937 F.2d 941 (4th Cir.) (holding that co-conspirator's § 924(c) violation can be imputed to other members under *Pinkerton* theory), *cert. denied,* 502 U.S. 948, 112 S.Ct. 395, 116 L.Ed.2d 345 (1991).

Our holding in *Medina* does not affect this court's precedent that a *Pinkerton* instruction may be given as an alternative theory of liability under § 924(c). In *Medina,* we addressed the question of whether there was sufficient evidence to support a § 924(c) conviction under an aiding and abetting theory. We held that, in order for a defendant to be convicted under § 924(c) pursuant to an aiding and abetting theory, the defendant must have "facilitated or encouraged the use or carrying of a firearm." *Medina,* 32 F.3d at 45. However, we were not there concerned with a *Pinkerton* instruction and our holding therefore was limited to an aiding and abetting theory of liability. Thus, *Medina* does not affect the applicability of a *Pinkerton* instruction to a § 924(c) conviction.[4] Accordingly, we hold that the district court did not err by instructing the jury on a *Pinkerton* theory of liability in connection with the § 924(c) violation.

### B. Aiding and Abetting Instruction

▮ Masotto also claims on this appeal that the district court erroneously instructed the jury on the theory of aiding and abetting with respect to the § 924(c) violation. Masotto contends that the instruction was erroneous because it allowed the jury to find him guilty based on his "mere knowledge" that members of the crew might use firearms without proof that he "performed some act that directly facilitated or encouraged the use or carrying of a firearm." *Medina,* 32 F.3d at 45.

▮ Under an aiding and abetting theory of liability, any person who "aids, abets, counsels, commands, induces or procures" the commission of a crime is punished as a principal. 18 U.S.C. § 2(a). Under the law of this Circuit, a defendant "cannot be convicted as an aider and abettor under § 924(c) merely because he knew that a firearm would be used or carried." *Medina,* 32 F.3d at 45. Instead, the defendant must have "performed some act that directly facilitated or encouraged the use or carrying of a firearm." *Id.*

We believe that the district court's instruction on the aiding and abetting theory required the jury to find more than that Masotto had "mere knowledge" that members of the crew might use firearms. In its general instruction on aiding and abetting, the court instructed the jury that it could not convict Masotto as an aider and abettor of any crime unless it found, *inter alia,* that "every element of the offense as defined in these instructions was committed by some person or persons and that *the defendant participated in its commission.*" (emphasis added). Later, when instructing the jury on the elements of § 924(c), the court instructed the jury that it could convict Masotto only if it found, *inter alia,* that he "carried or used a firearm, or aided and abetted the use of a firearm." The court then reiterated its general instruction on aiding and abetting, instructing the jury that it must find that Masotto "aided and abetted others in using

4. In an opinion filed after *Medina,* we upheld a § 924(c) conviction where the district court instructed the jury on both an aiding and abetting and a *Pinkerton* theory of liability. *United States v. Thomas,* 34 F.3d 44, 50 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1134, 130 L.Ed.2d 1095 (1995).

and carrying firearms during the course of the crimes charged." These instructions clearly directed the jury that it could not convict Masotto unless it found that he participated in the use and carrying of a firearm. Accordingly, the district court did not err in instructing the jury on the elements of aiding and abetting the § 924(c) offense.

### III. Sufficiency of the Evidence for § 924(c) Conviction

Masotto claims that there was insufficient evidence to sustain his conviction under § 924(c). When the jury is properly instructed on two alternative theories of liability, as here, we must affirm when the evidence is sufficient under either of the theories. See Griffin v. United States, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991) (requiring affirmance where evidence is sufficient under one of the alternative bases for conviction); see also United States v. Washington, 48 F.3d 73, 80 (2d Cir.) (affirming conviction based upon finding that evidence was sufficient under one of two alternative theories), cert. denied, — U.S. ——, 115 S.Ct. 2596, 132 L.Ed.2d 843 (1995). Because we find that the evidence was sufficient under the Pinkerton theory of liability, we affirm Masotto's § 924(c) conviction.

A criminal defendant challenging the sufficiency of the evidence underlying his conviction bears a heavy burden. United States v. Gelzer, 50 F.3d 1133, 1142 (2d Cir. 1995). "[A] conviction must be upheld if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Tejada, 956 F.2d 1256, 1265 (2d Cir.) (internal quotations omitted), cert. denied, 506 U.S. 920, 113 S.Ct. 334, 121 L.Ed.2d 252 (1992). On review, "we must credit every inference that could have been drawn in the government's favor." Id. (quotation omitted).

In order to convict under a Pinkerton theory of liability, the jury must first find that the defendant was a member of a conspiracy. See United States v. Harwood, 998 F.2d 91, 100 (2d Cir.1993), cert. denied, — U.S. ——, 114 S.Ct. 893, 127 L.Ed.2d 86 (1994). The essential element of a conspiracy is an agreement to accomplish an unlawful act. United States v. Wardy, 777 F.2d 101, 107 (2d Cir.1985), cert. denied, 475 U.S. 1053, 106 S.Ct. 1280, 89 L.Ed.2d 587 (1986). A jury may infer the existence of a conspiracy through circumstantial evidence, which only needs to demonstrate a tacit understanding between the conspirators to carry out an unlawful act. Id. Under the Pinkerton theory, a conspirator "can be held responsible for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not himself participate in the substantive crimes." Romero, 897 F.2d at 51 (quotation omitted). Whether a particular substantive crime is foreseeable and in furtherance of the conspiracy is a question of fact to be decided by the jury. Id.

In the present case, there was ample evidence for the jury to conclude that Masotto was a member of the conspiracy to hijack trucks, as alleged in count six of the indictment. At trial, Lucas, a crew member, testified that he told Masotto, Scerbo, and Bertuglia that he wished to steal trucks from Kennedy Airport, but that he "wanted to make sure [he] didn't step on anybody's toes, any other organized crime people over there." Lucas hoped that Masotto would provide him with the necessary protection. Lucas testified that Masotto responded, "[D]on't you worry about it ... just do things the right way." Scerbo, another member of the crew, testified that Masotto agreed to assist Lucas in the plan to steal trucks by storing and selling the merchandise contained in the stolen trucks. Lucas and Scerbo testified that Masotto then instructed Bertuglia, another crew member, to give Lucas the keys and alarm code to a local car wash that Masotto and Bertuglia controlled, so that Lucas would have a place to bring the stolen trucks. The record indicates that the crew proceeded to commit several truck robberies and that Masotto shared in the proceeds of some of these robberies. Based on these facts, a reason-

able jury could have found that Masotto was part of the conspiracy to commit robbery.

There also was sufficient evidence for the jury to find that a member of this conspiracy violated § 924(c) by carrying and using a firearm in connection with a violent crime. Lucas testified that both he and another crew member, Dave Amato, carried guns when they hijacked the All–Pro truck and that Amato used a gun to force the driver from the truck.[5] The evidence also was sufficient to support a finding that the use and carrying of a firearm was foreseeable to Masotto, based on Lucas' testimony that Masotto knew that crew members carried guns during the truck robberies. Finally, because the guns were used to carry out the truck robberies, the jury could have found that the guns were used in furtherance of the conspiracy to commit robbery. Accordingly, we believe that there was sufficient evidence for a reasonable jury to convict Masotto under § 924(c) based on the *Pinkerton* theory of liability.[6]

We have considered Masotto's remaining contentions and find them all to be without merit.

### CONCLUSION

In view of the foregoing, we affirm the judgment of the district court.

---

**5.** Although the district court did not instruct the jury that "use" of a firearm requires a finding that the defendant "actively employed" a firearm, the evidence establishes that crew members actively employed firearms during a violent crime. *See Bailey v. United States,* —— U.S. ——, ——, 116 S.Ct. 501, 509, 133 L.Ed.2d 472 (1995) (holding that the word "use" in § 924(c) requires the government to show "active employment" of a firearm). Amato's use of a firearm to force the truck driver out of the truck constitutes active employment of a firearm.

**6.** In view of our holding that there was sufficient evidence to sustain the § 924(c) conviction under the *Pinkerton* theory of liability, we do not address Masotto's contention that the evidence was insufficient under an aiding and abetting theory. *See Griffin,* 502 U.S. at 46, 112 S.Ct. at 467.