*United States v. Edwin Ferrer*

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of April, two thousand nineteen.

PRESENT:
> Dennis Jacobs,
> Richard J. Sullivan,
> > *Circuit Judges*
> Edward R. Korman,
> > *District Judge*.*

––––––––––––––––––––––––––––––––––––––

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                No. 17-2303

EDWIN FERRER,

> *Defendant-Appellant*.

––––––––––––––––––––––––––––––––––––––

* Judge Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

FOR APPELLANT:                    MALVINA NATHANSON, New York, New York

FOR APPELLEE:                     RICHARD D. BELLISS, Assistant United States
                                  Attorney (Carina H. Schoenberger, Assistant
                                  United States Attorney, *on the brief*), for Grant C.
                                  Jaquith, United States Attorney for the Northern
                                  District of New York.

_____

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED,**

**AND DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

Defendant-appellant Edwin Ferrer appeals from a judgment of conviction in the

United States District Court for the Northern District of New York (D'Agostino, *J.*),

arguing that the district court deprived him of his Sixth Amendment right to counsel by

allowing Ferrer to represent himself at a pre-trial suppression hearing without knowingly

and voluntarily waiving his right to representation.  For the reasons set forth below, we

AFFIRM the judgment.

### I. BACKGROUND[1]

On December 18, 2015, the Schenectady Police Department ("SPD") received a call

about an unidentified man bleeding profusely on a street corner.  SPD personnel and

paramedics responded to the call, and transported Ferrer by ambulance to the Ellis

Hospital Emergency Room ("ER").  Ferrer arrived at the ER in critical condition, but after

_____

[1] The Court assumes the parties' familiarity with the facts and procedural history of this case, and repeats them only as necessary.

2

being intubated and regaining consciousness, Ferrer spoke to both nurses and law enforcement in the room, and stated that he had shot himself in his car. Shortly after this discussion, the SPD recovered a handgun from Ferrer's automobile, which was located a short distance from where paramedics first encountered Ferrer. Ferrer was discharged later that afternoon from the ER and was transferred to Albany Medical Center ("AMC"). At AMC, law enforcement officers advised Ferrer of his *Miranda* rights, which he waived, and proceeded to question him. During this conversation, Ferrer again admitted to accidentally shooting himself. A later search of the car also resulted in the recovery of narcotics.

On March 2, 2016, a grand jury in the Northern District of New York returned an indictment charging Ferrer with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). The grand jury later filed a superseding indictment, which added an additional count of possessing a controlled substance in violation of 21 U.S.C. § 844(a). The case was assigned to Judge Scullin.

The court initially appointed George Baird, from the Office of the Federal Public Defender, to represent Ferrer. However, after Ferrer made multiple requests for new counsel, a magistrate judge relieved Baird and appointed a new attorney, Kevin Luibrand, in his stead.

Five months after Luibrand's appointment, Ferrer submitted a *pro se* letter to the district court, asking that Luibrand be removed because he was pressuring Ferrer to

3

accept a plea agreement. After holding a hearing – at which Judge Scullin warned Ferrer that "if you don't like the next attorney . . . then your only recourse is to represent yourself" – the district court removed Luibrand and appointed Lowell Siegel to represent Ferrer.

Soon thereafter, Siegel filed a motion to suppress all pre-arrest and post-arrest statements made by Ferrer to investigators, as well as all items seized from Ferrer's SUV. In particular, Ferrer sought to suppress (1) statements made to nurse Farrah Daviero and Detective Fragoso while he was in the ER; (2) statements made to ATF Special Agent Choi and Detective Fragoso later that day at AMC; and (3) the .22 caliber gun found in his Cadillac, along with all other items seized (which included narcotics, phones, and other documents). The government opposed the motion, and the district court scheduled a hearing. At the outset of that hearing, Siegel advised the court that Ferrer had "bec[o]me bellicose" and "yell[ed]" at Siegel during their previous meetings, App'x 84–85; accordingly, Siegel asked that new counsel be appointed to represent Ferrer. Ferrer agreed, and asked for "another lawyer if it's possible." App'x 87. In light of the court's prior admonition, and the fact that the government's witnesses were in court and prepared to testify, Judge Scullin directed Ferrer to proceed *pro se* at the suppression hearing, with Siegel remaining as standby counsel. The hearing proceeded as scheduled – with Ferrer cross-examining two witnesses – and the district court later issued an order denying Ferrer's suppression motion.

4

The case was subsequently reassigned to Judge D'Agostino, who appointed a fourth attorney, Eric Schillinger, to represent Ferrer, and set a trial date. After a three-day trial, the jury returned a guilty verdict on both counts. Judge D'Agostino ultimately sentenced Ferrer to 63 months' imprisonment on Count 1 and 24 months' imprisonment on Count 2, to run concurrently.

Ferrer filed a timely notice of appeal on July 26, 2017, requesting that this court vacate his conviction and remand for a new suppression hearing or a new trial. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. LEGAL STANDARD

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. A "corollary" to this right to counsel is the "right to dispense with a lawyer's help." *Dallio v. Spitzer*, 343 F.3d 553, 560 (2d Cir. 2003) (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). Accordingly, the Sixth Amendment "grants to the accused personally the right to make his defense." *Faretta v. California*, 422 U.S. 806, 819 (1975). While an accused can waive this right, to be effective such waiver must be "knowing, intelligent and voluntary," *McKee v. Harris*, 649 F.2d 927, 930 (2d Cir. 1981), such that it is "made with eyes open," *Adams*, 317 U.S. at 279. Whether a waiver is "knowing and intelligent" depends on the "totality of the circumstances." *Dallio*, 343 F.3d at 563.

While a certain class of Sixth Amendment violations are *per se* reversible, "most" Sixth Amendment violations are subject to harmless error review. *See Lainfiesta v. Artuz*, 253 F.3d 151, 157 (2d Cir. 2001). Under harmless error review, the burden is on the government to show that such constitutional error was "harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967).

We review the circumstances surrounding Ferrer's waiver of his right to counsel *de novo*. *See United States v. Spencer*, 995 F.2d 10, 11 (2d Cir. 1993).

## III. DISCUSSION

Assuming, without deciding, that Ferrer's waiver of the right to counsel at his suppression hearing was not knowing and voluntary, the record is nevertheless clear that any such error was harmless beyond a reasonable doubt.

For starters, Ferrer was not entitled to a hearing on his motion to suppress. The motion, filed by counsel, was unaccompanied by any affidavit to support the charge that Ferrer was subjected to "an unlawful police-initiated interrogation." Gov't App'x 2. By contrast, the government's opposition to the motion to suppress contained a number of affidavits and exhibits. Ferrer filed no reply. Accordingly, by declining to submit any affidavits or exhibits in support of his motion – thus choosing not to rebut the government's voluminous submissions – Ferrer failed to create a dispute of fact, and as a result, a hearing was not warranted. *See United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (hearing on motion to suppress required only if "the court . . . conclude[s] that

6

contested issues of fact going to the validity of the search are in question" (quoting *United States v. Licavoli*, 604 F.2d 613, 621 (9th Cir. 1979))).  Thus, any Sixth Amendment violation at the suppression hearing was entirely harmless, because under these circumstances, no evidentiary hearing was required at all.

Moreover, the record leaves no doubt that Ferrer's self-representation had no impact on the outcome of the motion.  We have previously recognized that a suppression hearing "is usually a far less complex proceeding," and the "risks of self-representation" at such a hearing "do not equate to those at trial."  *Dallio*, 343 F.3d at 561 n.2.  Here, Siegel acted as standby counsel during the entirety of the suppression hearing.  *See Dallio*, 343 F.3d at 570 (Katzmann, J., concurring) (finding error harmless where, during suppression hearing, the attorney "remained present as stand-by counsel for the duration of the hearing").  As in *Dallio*, the district court's provision of standby counsel allowed Ferrer "to consult [with Siegel] about the relative dangers and disadvantages of potential strategies."  *Id*. at 561 n.2.  Therefore, as Chief Judge Katzmann noted in his concurrence in *Dallio*, the fact that counsel "remained in the courtroom available to provide assistance or advice if needed" supports a finding of harmless error.  *Id*. at 569.

Nor has Ferrer articulated any strategy, tactic, or line of questioning that any lawyer – or properly-warned defendant – could have employed at the suppression hearing to alter the outcome.  After Ferrer regained consciousness in the ER, the nurse asked him "Who did this?" to which he responded, "I shot myself and lost the gun."

7

App'x 97. This statement was plainly admissible, as "*Miranda* does not apply to incriminating statements made to private persons in the absence of police subterfuge or intimidation." *United States v. Romero*, 897 F.2d 47, 52 (2d Cir. 1990). This critical admission established that Ferrer was in possession of the gun, and would have come in whether or not Ferrer was represented at the suppression hearing.

Additionally, the other statements Ferrer made to law enforcement were likewise clearly admissible. The testimony of the two witnesses at the hearing – Detective Fragoso and Patrolman Irwin – were in accord with the statements and evidence attached by the government to their opposition brief. Once again, there is no evidence that any lawyer – not even Clarence Darrow – could have asked questions that would have altered the outcome of the hearing, especially considering that not one affidavit or exhibit was submitted in support of the motion to suppress. In light of all the available evidence, it was clear that Ferrer was not in "custody" during the ER discussion with Detective Fragoso – Ferrer was in the hospital in order to receive life-saving emergency treatment, not "by means of physical force or show of authority." *United States v. Springer*, 946 F.2d 1012, 1016 (2d Cir. 1991) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)); *see United States v. New*, 491 F.3d 369, 373–74 (8th Cir. 2007) (holding defendant was not in custody when he made statements to law enforcement while "confined to [a hospital] bed" in part because "the agent . . . placed no constraints on [defendant's] movement," "no force" was used, and the atmosphere was not "police dominated"). Nor were Ferrer's statements in

8

the ER interview involuntary, as, according to the district court, "medical records demonstrate[d] that . . . he was lucid and responded appropriately to the questions of the hospital staff." App'x 146; *see United States v. Siddiqui*, 699 F.3d 690, 707 (2d Cir. 2012), *as amended* (Nov. 15, 2012) ("[C]ourts tend to view a hospitalized defendant's statements as voluntary where the defendant was lucid and police conduct was not overbearing.").

Finally, there is nothing to suggest that statements Ferrer made during the AMC interview would have been suppressed had he been represented by counsel during the hearing. Detective Fragoso's affidavit stated that Ferrer was "awake and sitting up" when he and Agent Choi arrived at AMC to question Ferrer. Gov't App'x 60. According to the district court, medical records further indicated that Ferrer's "mental status" was "normal, awake, oriented and/or at a pre-surgical baseline." App'x 148. Agent Choi affirmed that Ferrer was "conscious, spoke clearly, and appeared to understand and properly respond to my questions." Gov't App'x 66. Ferrer was fully advised, both orally and in writing, of his *Miranda* rights. And Ferrer attached nothing to his papers questioning this version of events. As such, it is clear beyond a reasonable doubt that Ferrer relinquished his rights voluntarily and "had a full awareness of the right being waived and of the consequences of waiving that right." *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995). Similarly, there was no dispute of fact as to (1) the circumstances surrounding the mid-afternoon search of Ferrer's car or (2) the later procurement of the search warrant; thus, there is no basis for inferring any semblance of prejudice as to those

9

searches. In sum, any Sixth Amendment violation at the suppression hearing was harmless beyond a reasonable doubt.

## IV. CONCLUSION

Having considered Ferrer's remaining arguments on appeal, we conclude that they are without merit. Accordingly, for the reasons set forth above, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of the Court