**UNITED STATES of America,**

v.

**Gustavo RAMOS, Amado Rudy Feliz–Ramirez, a/k/a "Cable," Carlos Ramos–Valenzuela, Jorge Omar Garcia–Martinez, Juan Ramos–Breach, Jorge Hernandez, Carlos Breach–Vega, Jesus Vaca–Acosta, a/k/a "Chaco," Danillo Paredes–Silva, a/k/a "Dadao," Polman Tavares, a/k/a "Harry," Adalberto Ortiz, a/k/a "Capu," Cesar Santana, a/k/a "Sandy," a/k/a "Raton," and Martin Aldez–Solis, Defendants.**

No. 03 CR. 0870(VM).

United States District Court, S.D. New York.

Dec. 1, 2004.

Edward A. Schneider, New York City, Henry E. Mazurek, New York City, Alan M. Nelson, Lake Success, NY, Donald J. Yanella, J Roberto Cardenas, New York City, for Defendants.

Lauren Goldberg, United States Attorney Criminal Division, New York City, for U.S.

### DECISION AND ORDER

MARRERO, District Judge.

Defendant Martin Aldez–Solis ("Aldez–Solis") moves pursuant to Federal Rule of Criminal Procedure 14 ("Rule 14") for severance of his trial from that of his co-defendants on the ground that a joint trial would violate his due process right to a fair trial. For the reasons set forth below, the motion is denied.

### I. BACKGROUND [1]

On July 21, 2004, the Government filed a two-count superseding indictment (the

---

1. For the facts stated herein, the Court relied on the Superseding Indictment, Allan P. Ha-ber's Declaration dated September 14, 2004, the Memorandum of Law in Support of Mar-

"Superseding Indictment") in this case charging Aldez–Solis and thirteen[2] other individuals with conspiring to import cocaine from Mexico to the New York area and to distribute cocaine from January 2003 until June 14, 2003.

The two counts of the Superseding Indictment together allege thirteen overt acts in furtherance of the alleged conspiracy to import and distribute cocaine. These alleged acts consist primarily of telephone calls among various defendants concerning the shipment and receipt of cocaine. The alleged overt acts also include the arrival of Aldez–Solis and his co-defendant, Gustavo Ramos ("Ramos"), in New York on June 10, 2003 to facilitate a cocaine transaction, the subsequent transportation of cocaine from Texas to New York, meetings in New York—including one at which agents of the Drug Enforcement Agency ("DEA") found Aldez–Solis and others—in connection with receipt and distribution of the cocaine shipment, and loading cocaine onto a truck in New York.

## II. *DISCUSSION*

■ The Government charged most of the defendants in this case in a single indictment pursuant to Federal Rule of Criminal Procedure 8 ("Rule 8"). Rule 8 allows the government to join defendants who "are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8. Rule 14 grants the trial judge discretion to sever the trials of co-defendants who have

been indicted together under Rule 8 in cases where a joint trial "appears to prejudice a defendant or the government." Fed.R.Crim.P. 14. In cases where it appears that joinder will prejudice a party, Rule 14 does not require severance, but "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro v. United States,* 506 U.S. 534, 538–39, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).

■ Once defendants have been charged together in a single indictment pursuant to Rule 8, there is a presumption in favor of trying them together. *See United States v. Gambino,* 729 F.Supp. 954, 970 (S.D.N.Y.1990), *aff'd in part, rev'd in part on other grounds,* 920 F.2d 1108 (2d. Cir.1990), *vacated on other grounds,* 503 U.S. 978, 112 S.Ct. 1657, 118 L.Ed.2d 381 (1992) ("Generally, 'where defendants ... are jointly indicted [they] should be jointly tried.'" (quoting *United States v. Ventura,* 724 F.2d 305, 312 (2d Cir.1983))); *see also United States v. Rosa,* 11 F.3d 315, 341 (2d Cir.1993) (noting the "preference, in the federal system, for the joint trial of defendants indicted together." (citing *Zafiro,* 506 U.S. at 537, 113 S.Ct. 933)). This presumption is especially strong in cases where, as here, "the crime charged involves a common scheme or plan." *Gambino,* 729 F.Supp. at 970 (citing *United States v. Turoff,* 853 F.2d 1037, 1042–43 (2d Cir.1988); *United States v. Girard,* 601 F.2d 69, 72 (2d Cir.1979)). The court in *Gambino* specifically noted that "[c]o-con-

tin Aldez–Solis' Pretrial Motions dated September 15, 2004 ("Def.Mem."), and the Government's letter to the Court dated September 24, 2004 ("Gov.Ltr."). Except where specifically referenced, no further citation to these sources will be made.

**2.** Of the fourteen defendants who were indicted together in the Superseding Indictment,

thirteen are expected to go to trial. One of them, Cesar Santana, pleaded guilty to both counts of the Superseding Indictment on June 10, 2004. The Government indicted a fifteenth individual, Armando Rivera, a/k/a Alex Pastrana, separately in this case on July 14, 2004.

spirators should be tried together whenever feasible." *Id.*

The presumption in favor of joint trials of jointly indicted defendants is based on the notion that separate trials of such defendants would "impair both the efficiency and the fairness of the criminal justice system" by requiring "that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand." *Richardson v. Marsh,* 481 U.S. 200, 210, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). Conversely, jointly trying such defendants "serve[s] the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Id.*

■ In light of these considerations favoring the joint trial of jointly indicted defendants, a defendant seeking severance must prove " 'facts demonstrating that he will be so severely prejudiced by a joint trial that it would in effect deny him a fair trial.' " *United States v. An–Lo,* 851 F.2d 547, 556 (2d Cir.1988) (quoting *United States v. Burke,* 700 F.2d 70, 83 (2d Cir. 1983)); *see also Zafiro,* 506 U.S. at 539, 113 S.Ct. 933 ("[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."); *see also United States v. Yousef,* 327 F.3d 56, 149 (2d Cir.2003) (" 'The principles that guide the district court's consideration of a motion for severance usually counsel denial.' " (quoting *Rosa,* 11 F.3d at 341)).

Aldez–Solis argues that his trial should be severed from that of his co-defendants for two reasons: because he "would be severely prejudiced by the scale of a trial involving thirteen co-defendants" and because, he claims, there is a "great disparity in the amount of evidence that will be offered against many of them as compared to him." (Def. Mem. at 8.) The scale of the trial and the disparity in the amount of evidence, according to Aldez–Solis, would create an unacceptable risk of "spill over" such that "the jury will be unable to differentiate between the acts of Mr. Aldez–Solis and the acts of co-defendants." *Id.* at 8–9. The Court finds that neither the scale of the trial nor the disparity in the amount of evidence that will be offered against Aldez–Solis as compared to the amount that will be offered against the other defendants supports severance.

■ In deciding whether severance is warranted, this Court has determined that the following factors should be considered: (1) the number of defendants and the number of counts; (2) the complexity of the indictment; (3) the estimated length of the trial; (4) disparities in the degrees of involvement by defendants in the overall scheme; (5) possible conflict between various defense theories; and (6) prejudice resulting from evidence admissible as to some defendants, but not others. *See U.S. v. Santiago,* 174 F.Supp.2d 16, 22 (S.D.N.Y.2001) (citing *United States v. Gallo,* 668 F.Supp. 736, 749 (E.D.N.Y. 1987)). "While none of these factors is dispositive, each is intended to provide guidance as to whether a jury will be capable of considering the evidence as to each defendant separately, independent of evidence against co-defendants." *Id.* (citing *Gallo,* 668 F.Supp. at 749).

■ Aldez–Solis's argument that the scale of the trial supports severance implicates the considerations enumerated in the first and third factors listed above: the

number of defendants and counts and the estimated length of the trial. As noted above, this case involves thirteen co-defendants, all of whom have been charged with the same two conspiracy counts. In determining how long a trial is likely to last, the Court is to "elicit from the prosecutor a good-faith estimate of the time reasonably anticipated to present the government's case." *United States v. Casamento*, 887 F.2d 1141, 1151–1152 (2d Cir.1989). The Government has represented that this case "will take no more than three to four weeks to try." (Gov. Ltr. at 6, n. 2.) Aldez–Solis does not provide, nor does the Court find, any reason to doubt the accuracy or good-faith nature of this estimate.

The Court finds that the scale of this trial does not weigh in favor of severance. Aldez–Solis's argument that the scale does favor severance is not based on an explanation of the particular ways in which it would be prejudicial to him, but instead on the claim that, as a result of the trial's scale, "the burden should shift to the government," (Def. Mem. at 10), to justify a joint trial. Aldez–Solis bases this claim on the Second Circuit's holding in *Casamento*. In that case, the court held that, "[i]n those cases where the judge determines that the time for presentation of the prosecution's case will exceed four months, the judge should oblige the prosecutor to present a reasoned basis to support a conclusion that a joint trial of all the defendants is more consistent with the fair administration of justice than some manageable division of the case into separate trials for groups of defendants." *Casamento*, 887 F.2d at 1152. The condition for shifting the burden to the prosecution to justify a joint trial—that the presentation of the prosecution's case is likely to last more than four months—however, is not present in this case. In light of the Court's determination that the trial in this case is likely to last about four weeks, *Casamento* does

not support a shifting of the burden to the prosecution.

Moreover, the Court does not find, nor does Aldez–Solis argue, that the number of defendants and counts and the estimated length of the trial in this case would, by themselves, result in any undue prejudice to him. Even in *Casamento*, where the scale of the trial had caused the presumption to shift to favor severance and where the trial involved "twenty-one defendants . . ., spanned more than seventeen months, produced more than forty-thousand pages of trial transcript, and, . . ., involved the introduction of thousands of exhibits and the testimony of more than 275 witnesses," *id.* at 1149, the Second Circuit found that the trial court's decision not to sever the trial had not resulted in substantial prejudice to any of the defendants. In Aldez–Solis's case, where the burden remains on the defendant to justify severance, where there are far fewer defendants, and where the trial is likely to take far less time than the *Casamento* trial, there is no compelling reason to support a finding that the scale of the trial would, by itself, unduly prejudice Aldez–Solis.

Aldez–Solis also argues that due process requires severance of his case because "[t]he bulk of the evidence, will relate to the other defendants." (Def. Mem. at 8.) This argument implicates the considerations enumerated above in the fourth and sixth factors to be considered in deciding severance motions: disparities in the degrees of involvement by defendants in the overall scheme and prejudice resulting from evidence admissible as to some defendants, but not others. The Court finds that neither of these considerations weighs in favor of severance in this case.

First, it does not appear, based on the Government's representation of the evidence to be presented at trial, that Aldez–

Solis's degree of culpability is "markedly different" from that of his co-defendants. Aldez–Solis suggests that the evidence to be introduced against him consists primarily of wiretap recordings of two telephone calls. He states that wiretap recordings of telephone conversations among various of the co-defendants "will be the primary source of direct evidence presented in the governments [sic] case." (Def. Mem. at 7.) None of those telephone calls, he claims, contain his voice and the name "Martin" is mentioned in only two of them and in instances that are not incriminating. (*Id.* at 4, 8.)

The Government counters, however, that it expects to introduce substantially more evidence against Aldez–Solis than the recording of these two telephone calls. The Government states that it "expects to introduce evidence that will show that in the days after their arrival in New York, Ramos and Aldez–Soliz met frequently with members of the Organization [a Mexico-based drug organization] based in New York and discussed the imminent cocaine shipment" and that, "[i]n these meetings, Aldez–Solis ... made it plain that he fully knew about the cocaine transaction that was about to happen and was traveling with Ramos specifically to assist in the execution of the deal." (Gov. Ltr. at 2.) The Government also states that it "will prove at trial that ... [the] apartment [where the DEA found Aldez–Solis and other alleged co-conspirators on the same day that the cocaine shipment allegedly arrived in New York] was a base of operations for the Organization in the days leading up to the cocaine shipment." (*Id.*) In addition, the Government states that the DEA agents who found Aldez–Solis with the other defendants in that apartment witnessed him "attempting to flee by scurrying out the window." (*Id.*)

In general, the Government represents that it "expects to introduce evidence about what Aldez–Solis did and said in New York after he arrived with Ramos in the days prior to the cocaine transaction" and that "[t]hat evidence will show that Aldez–Solis was in town specifically to help Ramos complete the deal and knew exactly what was happening." (*Id.* at 4.) In fact, the Government states that the evidence will show that Aldez–Solis "was among those at the center of the planning and carrying out of the plan." (*Id.* at 5.) Thus, it does not appear that the evidence to be presented against Aldez–Solis will be insignificant or will be limited to proving that he played a minor role in the alleged conspiracy.

Even assuming that less evidence will be presented against Aldez–Solis than against each of his co-defendants, this fact by itself does not imply that severance is required. As the Second Circuit has noted, "disparity in the quantity of evidence and of proof of culpability are inevitable in any multi-defendant trial, and by themselves do not warrant a severance." *United States v. Cardascia,* 951 F.2d 474, 483 (2d Cir.1991). Moreover, prejudicial spillover warranting severance is, in general, "an unlikely occurrence when all the defendants are charged under the same conspiracy count." *United States v. Salameh,* 152 F.3d 88, 115 (2d Cir.1998) (citing *United States v. DiNome,* 954 F.2d 839, 843–44 (2d Cir.1992)).

In addition, much of the evidence that would be offered against Aldez–Solis at a joint trial would likely be admissible against him in an individual trial in light of the fact that he has been charged with conspiracy. Federal Rule of Evidence 801(d)(2)(E), for instance, provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy," Fed.R.Evid. 801(d)(2)(E), is not inadmissible as hearsay. Evidence

that would be admissible against Aldez–Solis under this rule at a separate trial "is neither spillover nor prejudicial." *Rosa*, 11 F.3d at 341 (citing *United States v. Villegas*, 899 F.2d 1324, 1347–48 (2d Cir. 1990); *United States v. Bari*, 750 F.2d 1169, 1178 (2d Cir.1984)); *see also Salameh*, 152 F.3d at 115 ("'Prejudice' occurs in joint trials when proof inadmissible against a defendant becomes a part of his trial solely due to the presence of co-defendants as to whom its admission is proper." (citing *United States v. Cervone*, 907 F.2d 332, 341–42 (2d Cir.1990))).

Although it is impossible to determine at this preliminary stage whether all the evidence to be offered against Aldez–Solis's co-defendants would be admissible against him at a separate trial, there is sufficient indication that much of it would be, thus supporting a determination that severance is not warranted. The test for the admissibility of statements by co-conspirators that would be applied in a separate trial of Aldez–Solis requires that the Court "find, by a preponderance of the evidence, that: (1) there was a conspiracy, (2) the declarant and the party against whom the statement is offered were members of the conspiracy, and (3) the statement was made during the course and in furtherance of the conspiracy." *Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). In making these determinations, "the contents of the statement shall be considered but are not alone sufficient to establish ... the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered." Fed. R.Evid. 801(d)(2)(E).

The preliminary representations that the Government and Aldez–Solis have made regarding the evidence that will likely be introduced at trial against Aldez–Solis and his co-defendants indicates that all three of these criteria would be satisfied in a case exclusively against Aldez–Solis. For instance, Aldez–Solis, in his Memorandum of Law, excerpts several of the wiretap telephone conversations among certain of his co-defendants, which, according to him, will be "the primary source of direct evidence presented in the governments [sic] case." (Def. Mem. at 7.) In the excerpted portions of the conversations, the co-defendants make, as Aldez–Solis himself puts it, a "half baked [sic] attempt to code the substance of what was being discussed," (*id.*), *i.e.*, the alleged narcotics conspiracy. Some of these conversations are alleged to have involved Aldez–Solis's co-defendant, Ramos, whom the DEA found along with Aldez–Solis and other defendants in the apartment that was allegedly the conspirators' base of operations in New York and the intended delivery location of the cocaine. The Government also represents (and Aldez–Solis appears to concede)[3] that it has evidence that Aldez–Solis traveled with Ramos to New York approximately four days before the intended day of the delivery of the cocaine to the apartment in New York where Aldez–Solis was found. (*See* Gov. Ltr. at 2.) Thus, based on the preliminary representations that the parties have made regarding the evidence to be offered at trial, it appears that there is a preponderance of evidence (including evidence other than the co-conspirators' statements themselves) showing that there was a conspiracy, that the declarants in the wiretap telephone conversations and Aldez–Solis were members of the conspiracy, and that the statements made in the wiretap telephone conversations were made during the course and in furtherance of the conspira-

---

3. In his Memorandum of Law, Aldez–Solis refers to "[t]he fact that Martin Aldez–Solis traveled from Mexico to New York with Gustavo Ramos." (Def. Mem. at 8.)

cy. Therefore, it appears that much of the evidence that, on its face, only relates to Aldez–Solis's co-conspirators would be admissible against him at a separate trial pursuant to Fed.R.Evid. 801(d)(2)(E).

In sum, the Court finds that any disparities in the amount of evidence to be offered against Aldez–Solis and the amount to be offered against his co-defendants would not result in substantial prejudice to Aldez–Solis because: (1) those disparities do not appear to be substantial; (2) some disparities are inevitable in multi-defendant cases; and (3) the evidence that directly relates only to Aldez–Solis's co-defendants would likely be admissible against him in an individual trial.[4]

Aldez–Solis does not address the remaining factors that are to be considered in deciding severance motions: the complexity of the indictment and possible conflict between various defense theories. The Court finds that neither of these factors weigh in favor of severance. First, the indictment is brief and simple. As noted, it contains only two counts, each of which relates to one aspect of a single, overarching conspiracy: count one charges a conspiracy to import cocaine and count two charges a conspiracy to distribute the same drugs. (*See* Superseding Indictment at 1, 4.) The alleged overt acts in furtherance of the conspiracy form part of a single, unified plan to import and distrib-

ute cocaine. These acts allegedly took place over the course of less than three weeks. (*See id.* at 3, 5 (alleging acts on various dates from May 27, 2003 through June 14, 2003).) The alleged relations of the various co-defendants to the conspiracy are clearly set forth in the Superseding Indictment: some were the intended recipients of the cocaine in New York and others were the cocaine suppliers and transporters based in Mexico. Finally, the defendants' alleged acts all relate in a straightforward manner to arranging for and/or effecting the transportation and delivery of the cocaine. (*See* Gov. Ltr. at 1; *see also* Superseding Indictment at 3–7.) Thus, the Superseding Indictment describes a single, uncomplicated activity in which the defendants are alleged to have played clear and standard roles, and which took place over a very brief period of time. The Court finds that such an indictment does not present any complexity weighing in favor of severance.

Aldez–Solis has not alleged any possible conflict between his defense theory and the theories of his co-defendants. The Court does not find any such conflict based on its review of the parties' submissions. Therefore, this factor does not weigh in favor of severance.

Finally, even if Aldez–Solis may be prejudiced to some extent by the joinder of his trial with that of his co-defendants, the

---

4. Aldez–Solis proposes that the possible prejudice that such evidence might cause if admitted against him at a separate trial could be avoided by his stipulation to some of the allegations against the alleged co-conspirators. Although it is conceivable that, in a separate trial, Aldez–Solis could stipulate to some of the evidence that would be admissible to prove the alleged conspiracy, the Court finds that the resulting increase in fairness—if any—that would result from a separate trial in which such a stipulation was made does not outweigh the considerations discussed above that favor a joint trial. This is so

particularly in light of the facts that the only charges against Aldez–Solis and his co-conspirators allege conspiracy and that a co-conspirator " 'can be held responsible for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not himself participate in the substantive crimes.' " *United States v. Masotto,* 73 F.3d 1233, 1239 (2d Cir.1996) (quoting *United States v. Romero,* 897 F.2d 47, 51 (2d Cir. 1990)).

Court may ameliorate any such prejudice through means less burdensome, potentially unfair, and extreme than severance. As this Court has previously noted, the "risk of [prejudicial spillover] ... can be mitigated through carefully crafted limiting instructions that warn the jurors to take into account only the evidence admissible against each defendant." *Santiago,* 174 F.Supp.2d at 23. Such "limiting instructions to the jury have emerged as the preferred device for curing any prejudicial spillover that may result from a multi-defendant, multi-count trial." *Id.* at 22.

## III. *CONCLUSION*

For the reasons set forth above, it is hereby

**ORDERED** that the motion of defendant Martin Aldez–Solis for severance of his trial is DENIED.

**SO ORDERED.**